## Sayre, Appellant, *v.* Pennsylvania Public Utility Commission

Argued April 23, 1947.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Bresci R. P. Leonard,* for appellant.

*H. Ray Pope, Jr.,* with him *William M. Rutter* and *Vincent P. McDevitt,* for appellee.

*William H. Markus,* for intervening appellee.

OPINION BY DITHRICH, J., July 17, 1947:

For years Chester C. Sayre, appellant, has had a virtual monopoly in the highly specialized field of transporting or vanning horses for hire for race, hunt, and show purposes in Allegheny County and most of western Pennsylvania.  Contending that ". . . in order to stay in business and maintain [his] equipment [he would] have to do about 90 per cent of the business," he

has appealed an order of the Public Utility Commission granting a limited certificate to Edward W. Seifert "To transport, as a Class D carrier, horses between points in that part of the County of Allegheny lying north of the Allegheny and Ohio Rivers;" and ". . . from points in that part of Allegheny County . . . to points in Pennsylvania, and vice versa."

We start with the well established principle that "The primary object of the public service laws is not to establish a monopoly or to guarantee the security of investment in public service corporations, but first and at all times to serve the interests of the public": *Hoffman v. P. S. C.*, 99 Pa. Superior Ct. 417, 429; *Colombo v. Pa. P. U. C.*, 159 Pa. Superior Ct. 483, 487, 48 A. 2d 59.

Whether there shall be competition in any given field and to what extent is largely a matter of policy and an administrative question that has wisely been committed by the legislature to the sound judgment and discretion of the Public Utility Commission, *Alko Express Lines v. Pa. P. U. C.*, 152 Pa. Superior Ct. 27, 30 A. 2d 440; and Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS 1437, provides that on appeal to this court "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, . . ." Since there is no question of law involved, our inquiry is directed solely to determining the sufficiency of the evidence.

To begin with there was no special fault to be found with the service rendered by Sayre during the years that he has had the field practically to himself. Incidentally, he was the only protestant who appeared and his was the only testimony against the granting of the application. The only other competitor in Allegheny County testified for the applicant. We repeat there was no special fault found with the service of Sayre. The

application of Seifert was based almost solely on the inadequacy of the service available to the hundreds of horse owners in the area affected, an area that stables and vans more horses for hunt and show purposes than any other comparable area.

Appellant makes much of the fact that out of the hundreds affected, only eleven appeared and testified for the applicant, the intervening appellee. But an examination of the testimony of the eleven discloses that they were fairly representative of the horse owners of all sorts to be serviced primarily by the applicant, and as stated by this court speaking through PARKER, J., later Mr. Justice PARKER, in *York Express Co. v. P. S. C.*, 110 Pa. Superior Ct. 197, 199, 168 A. 327: ". . . the weight of the testimony [cannot] be properly determined in a proceeding of this kind by counting noses, any more than it can in a common law case. One assertion supported by facts and reasons may be more persuasive than the mere expression of an opinion by a dozen." The weight to be given the evidence is for the commission to decide; our inquiry is confined to its sufficiency and probative force.

Appellant further contends "that the proof of need for the service was confined to the private convenience of a small and restricted group of associates." If that was all there was to it, we would say that the point was well taken. But the proof established to the satisfaction of the commission, and it is the fact-finding body, that the granting of the restricted certificate was necessary both for the accommodation and convenience of the public. "Absolute necessity for additional service is not the test. Arrow Carrier Corp. v. P. S. C., 120 Pa. Superior Ct. 570, 182 A. 711. 'Accommodation' or 'convenience' of the public are factors to be considered": *Kulp v. Pa. P. U. C.*, 153 Pa. Superior Ct. 379, 382, 33 A. 2d 724.

To one inexperienced in hunting or showing horses, the time of arrival at the place fixed for the meet or the

holding of the show may be relatively unimportant, but to the initiated time is of the essence. It is a matter of common knowledge, aside from the evidence in this case, that it doesn't do to have a horse stand around for time on end either before or after a hunt or to arrive at a show just in time, or what is worse still, too late for the class in which it is to be shown. And it stands to reason that a carrier located near the stables on the north side of the Ohio and Allegheny Rivers can better supply the need and demand for carrier service in that area than can one located south of the rivers some 25 miles away, as is appellant. To one familiar with Allegheny County and its horse population, there appears to be a separate need for carrier service in the North Park, area the same as in the South Park area, and there is nothing in the record at hand to indicate that any loss, if such there be, ensuing from the competition furnished the certificated carrier in the South Park area will be visited upon the public. He testified "If the horse business should double and I got 50 per cent of the increase, I would have to have pretty nearly all the business to keep it going the *other twelve months* of the year." (Emphasis added.) We are not able to comprehend clearly just what the witness meant by that statement. Evidently the use of the words "the other twelve" was an inadvertence or a mere slip of the tongue. But be that as it may, the statement does throw enough light on the situation to make the comment by the commission "That resulting competition is the fundamental reason for the appeal" readily understandable.

We could go on and cite innumerable cases where, under similar circumstances, the respective rights of the commission and this court have been clearly defined, but we will confine ourselves to our most recent utterance in *Colombo v. Pa. P. U. C.,* supra, page 487, where, speaking through Ross, J., we said: "This court . . . in determining such matters as are involved in this appeal . . . will confine itself to the ultimate question as to whether the commission acted within its powers."

The record discloses that the granting of the certificate here complained of was a proper exercise of the power of the commission and that there was ample evidence with rational probative force to support its finding ". . . that the proposed service subject, however, to considerable limitation as to area, is necessary for the accommodation and convenience of the public"; and we are in accord with its conclusion that "The definite advantages which will accrue to the owners of horses by making applicant's service available far outweigh any slight possible diversion of traffic from existing carriers."

Order affirmed.