Painter et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued December 15, 1960. Before RHODES, P.J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*William H. Mitman,* with him *Stively and Mitman,* for appellants.

*Miles Warner,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Otis W. Erisman,* with him *Samuel B. Corliss,* and *Truscott, Kline, O'Neill & Howson,* for intervenor-appellee.

OPINION BY ERVIN, J., March 22, 1961:

On September 26, 1959 Whitford Water Company (Whitford), an existing water company, filed with the

commission an application to extend its authority to furnish water to the public in an additional area in West Whiteland Township, which area is adjacent to territory already being served by Whitford. On November 17, 1959, W. Robert Painter, J. Frederick Painter, Hervey M. Painter and Kennard G. Porter, Jr., individually and as incorporators of the Uwchlan Water Company, a proposed corporation, and the Uwchlan Water Company (Uwchlan), filed an application with the commission seeking approval of its incorporation as a public utility and for the right to furnish water to the public in a portion of West Whiteland Township (being approximately the same territory as the additional territory sought by Whitford). On January 15, 1960 W. Robert Painter, J. Frederick Painter, Hervey M. Painter and Kennard G. Porter, Jr., individually and as incorporators of the Whiteland Water Company, a proposed corporation, and the Whiteland Water Company (Whiteland), filed with the commission an application seeking approval of its incorporation as a public utility and the right to furnish water to the public in an area in Uwchlan Township to the west and north of the area sought by Uwchlan. Uwchlan and Whiteland filed protests against the application of Whitford and Whitford filed protests against the applications of Uwchlan and Whiteland.

On November 20, 1959 the commission's examiner held a hearing in Coatesville on Whitford's application. On February 29, 1960 the commission's examiner held a hearing in West Chester on the applications of Uwchlan and Whiteland. The testimony of Whitford's Coatesville hearing was made a part of the record of the hearing of Uwchlan and Whiteland held in West Chester. The examiner, without objection, treated the proceedings as one involving a single application and the commission later did the same thing in its order.

On June 27, 1960 the commission entered its order disposing of all applications. The order granted Whitford the additional rights it sought and denied the applications of Uwchlan and Whiteland. Two separate appeals were then taken by Uwchlan and Whiteland. Whitford was permitted to intervene in both appeals as a party appellee.

As will be gleaned from the above, this is a territorial dispute between an existing water company, on the one hand, and two proposed companies on the other, over which should be permitted to serve a common area. Competition within the same territory by non-carrier public utilities, such as water companies, is deleterious and not in the public interest save in rare instances. In *Perry Co. T. & T. Co. v. Public Service Commission*, 69 Pa. Superior Ct. 529, we affirmed an order of the Public Service Commission in which was contained the following language: "In the matter of the public supply of water, electricity and other public utilities this commission, under the powers and authority vested in it by the provisions of the Public Service Company Law, has from its beginning adopted and pursued a policy whereby unnecessary and useless competition should be prevented. This policy was adopted after careful consideration and is being carried out for the benefit and protection not only of the consumer but also of the Public Service Companies."

Appellants argue that the commission failed to make sufficient findings of fact upon which to base its order. The order expressly finds that certification of one of the rival applicants is necessary for the accommodation, convenience and safety of the public; that Whitford has the necessary facilities, managerial ability and other factors necessary to render the service; and that Whitford, for the reasons assigned in the order, should be preferred. The order is entirely ade-

quate to enable us to determine the issues and to decide the appeals on their merits.

Appellants also argue that the commission erred in finding that Whitford's present source of supply is a well with a productive capacity in excess of 700 gallons per minute. The testimony of Samuel B. Corliss, Whitford's president and operating manager, is entirely sufficient to justify this finding. In testifying on this subject he said: "We know it is at least 700 to 800 which was the maximum capacity of the compressor which constantly discharged water at that rate for a period of several days in March of 1957."

It is also argued that the commission erred in finding that during the course of the proceedings Whitford constructed an additional well having a productive capacity of approximately 275 gallons per minute. It is true that the record does not contain evidence to justify a finding that the second well was actually constructed. There was testimony, however, that such a well was planned. This was harmless error because the testimony clearly revealed that Whitford was fit to qualify, with its present facilities and planned additions, to serve its present territory and the additional territory which it sought to serve.

It is also argued that the commission erred in finding that Whitford would charge the same rates for water services furnished in the proposed additional territory as it was charging for similar service in its present territory. The testimony of Mr. Corliss, in our opinion, is sufficient to support this finding of the commission.

It was also argued that the commission erred in finding that Whitford was ready, willing and able to provide adequate and satisfactory water service to customers in the new proposed territory. It is true that the proposed Whitford charter extension did not include all of the area proposed for Uwchlan and White-

land. We think the record is clear that the commission's findings were supported by sufficient and competent testimony on these subjects. Whitford already has an 8-inch main from its pumping station to the edge of the additional territory. At the present time it is serving 36 or 37 customers in an area of potentially 169 customers. Before installing the pipe necessary to serve the new additional territory, Whitford would submit its installation plans to several reputable bidders and use the lowest bid. Mr. John B. Yerkes, an engineer, testified that the highest point in the proposed new territory is approximately 625 feet in elevation. His testimony was that Whitford could deliver 250 gallons per minute at 30-pound head delivery pressure at Lot 63, which had an elevation of 593 feet. He testified that between that elevation and the highest elevation of 625 feet "you would have another 30 foot head loss, plus friction loss, and that would amount to—we would lose somewhere around 20 to 30 gallons at the same delivery pressure." With the present equipment of Whitford Water Company, he testified that it could supply a proper pressure anywhere in the areas in which Uwchlan and Whiteland were applying for a franchise. He also testified that the present pump and No. 1 well would serve anywhere between six to eight hundred customers in the area. Without referring to further testimony of Mr. Yerkes we are convinced that his testimony entirely supported the commission's findings as to the ability of Whitford to adequately supply the new territory with water service.

It was also argued that the commission erred in failing to find that Uwchlan could furnish better water service at a lower cost to the territory in question. The record shows that appellants' proposed rates would be slightly lower than those presently charged by Whitford in the lower consumption blocks but some-

what higher than Whitford in the higher consumption blocks. The small difference in rates should not be controlling because the rates are always subject to the control of the commission. It is reasonable to suppose, however, that the cost of operating and maintaining two small adjacent water companies would be much greater than the cost of operating and maintaining one. The time spent on meter reading and billing, the electricity consumed, the bookkeeping and billing, and many other items of overhead, as well as maintenance and operation costs, would be greater for two separate companies than for one. The number of tax and information forms to Federal and state offices would double and the work to prepare them would be greatly increased for two companies instead of one. It seems clear to us that a single company twice as large would be able to provide its services at lower rates than could two separate companies each serving half the territory.

Whitford built its plant and water mains to not only serve its present territory but also to serve adjacent areas, including the area under dispute. Undoubtedly this held down its profits initially. It incurred a loss of approximately $400.00 for the calendar year 1958. With more customers it should be able to operate at a profit. Mr. Corliss testified that "the sooner the company gets a substantial number of customers the sooner it will be able to improve its physical plant with the installation of substantial storage facilities and fire plugs." He also testified that fire protection could only be supplied by a company with several hundred customers.

The extent of competition in any field of public utility service is a matter of administrative discretion committed by the legislature to the commission: *Sayre v. Pa. P. U. C.*, 161 Pa. Superior Ct. 182, 54 A. 2d 95.

It is our conclusion that the findings of the commission were entirely sufficient to permit us to under-

stand and determine the issues involved and that those findings were based on substantial and competent evidence. They are, therefore, conclusive. *Duquesne Light Co. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 568, 107 A. 2d 745.

Not only was Whitford's application the first of the three filed in point of time but we repeat that where a utility such as a water company is already in the field and ready, willing and able to make an extension into new territory, it should be given preference over a newcomer.

Orders affirmed.