Dublin Water Company, Appellant, *v.*
Pennsylvania Public Utility
Commission.

Argued June 21, 1965.  Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*James E. Riely,* with him *Milton Berger,* and *Berger, Riely, Speese & Barol,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Norman T. Hayes, Jr.,* with him *Robert H. Young,* and *Morgan, Lewis & Bockius,* for intervening appellee.

OPINION BY ERVIN, P. J., September 16, 1965:

This appeal from an order of the Pennsylvania Public Utility Commission, dated June 1, 1964, involves a dispute between competing water companies as to the right to render service in certain areas of Upper Dublin Township, Montgomery County. The companies involved are Dublin Water Company, appellant (Dublin), and Philadelphia Suburban Water Company (Suburban). A statement of the rather lengthy proceedings is necessary to an understanding of the questions raised by the appeal.

Suburban is a large water company serving an area of 300 square miles and 182,139 customers in suburban Philadelphia. Through its predecessor companies, Suburban obtained charter authority for water service to all of Upper Dublin Township, initiated service in the township in 1903 and, as of 1962 served some 2,000 customers in the south and eastern portion of the township.

On September 2, 1958 the commission approved the incorporation of Dublin and authorized it to render water service in a comparatively small area of the

northwestern portion of Upper Dublin Township. The executive head of Dublin stated it was organized to provide service in this Maple Glen area because Suburban refused such service. Suburban's Mr. Myers denied his company ever refused such service and stated that Suburban received no actual notice of Dublin's formation other than constructive notice by publication.

By later application proceedings the commission approved extensions of Dublin's water service, on May 9, 1960, to another comparatively small area, immediately to the east of Dublin's original franchise territory. Suburban received notice of this extension of territory by Dublin and did not oppose it.

On May 5, 1961 Dublin filed an application covering a three-quarter square mile area to the west of its original territory. Suburban did not oppose this application. However, on June 19, 1961 Dublin filed an amendment to its application at 88148, which greatly enlarged the territory sought to be served by Dublin and included large areas to the west of Dublin's territory. The amendment also included a large square of land to the east of Dublin's then certificated territory, namely, all the land north of Limekiln Pike, west of Dreshertown Road and south of the boundary (Welsh Road) between Upper Dublin and Horsham Townships, comprising some 2,500-3,000 acres and about one-third of the area of Upper Dublin Township. Included in the eastern area of Dublin's amended application at 88148 was a real estate development known as the Aidenn Lair tract.

Suburban protested the entire eastern extension of Dublin's amended application at A.88148, especially the Aidenn Lair tract. Suburban contended Dublin had notice that Suburban had "concluded arrangements" for an extension of Suburban's facilities to the Aidenn Lair tract, and that as to this tract a competitive condition had been created. Hearings on Dublin's

amended application at 88148 were held June 28 and August 22, 1961. The record showed that on June 22, 1961, L. W. Becker, developer of Aidenn Lair, entered into a cost participation contract for an extension of Suburban's water facilities north from Susquehanna Road, on Dreshertown Road and into the Aidenn Lair development. The testimony shows Dublin knew of Suburban's intention to serve Aidenn Lair when Dublin filed its amendment at A.88148. At the time of the hearing of August 22, 1961 Suburban's extension north on Dreshertown Road to the Aidenn Lair development had been substantially completed. The second section was finished August 25, 1961.

Thereafter, on August 31, 1961, Dublin filed its complaint against Suburban at C.17661, averring that Suburban had constructed its mains into Dreshertown Road and the Aidenn Lair development without commission approval and asked the commission to order Suburban to enjoin the use of this extension unless authorized by the commission. Suburban's answer to Dublin's complaint admitted its contract with respect to Aidenn Lair; averred it had charter authority to serve all of Upper Dublin Township since 1903; that it was serving 2,000 customers in the eastern portion of the township, and that it had authority to extend its mains without commission approval under the grandfather clause of the Public Utility Law, Act of May 28, 1937, P. L. 1053, §1401, 66 PS §1531.

On December 11, 1961 the commission entered an order at Dublin's A.88148 granting Dublin's request for expansion north and west, but denying the application in so far as it sought new territory south and east (with certain unimportant exceptions). In so doing the commission stated that "The controlling consideration in determining who shall render a public utility service in a disputed area is which applicant is better fitted. to carry out the duties and obligations imposed upon a public utility. That the applicant

herein has the experience and capability necessary to furnish adequate water service in the areas proposed . . . is not questioned. It would appear, however, that there is no good reason to speculate on such future possibilities, when Suburban, on this record, is ready, willing and able to furnish the service requested by the developers of Aidenn-Lair Farm." The December 11, 1961 order did not refer to the pending complaint at C.17661 and Dublin took no appeal from the order of December 11, 1961.

Hearings on the complaint proceeding at C.17661 were held October 3, 1961 and November 30, 1961. Meantime, on February 28, 1962, Dublin filed another application, A.88829, to add to its easterly boundary a 73-acre tract known as the Dublin Downs extension. Suburban withdrew its protest to this application, as amended. The application was granted April 2, 1962 and is not directly involved in this appeal.

On April 16, 1962, the commission, reciting and reviewing prior proceedings at A.88148 and 88829, entered an order dismissing Dublin's complaint at C.17661 on the ground that its orders at A.88148 and A.88829 had resolved all matters of conflict affecting the parties to the complaint and had rendered the complaint moot. Dublin petitioned for a rehearing of its complaint at C.17661, to which Suburban filed an answer. Some eight months later, on December 17, 1962, the Commission entered an order reopening the complaint of Dublin at C.17661 providing Dublin filed an application within thirty days setting forth what portions of Upper Dublin Township, including the southeastern portions of the township not then certificated to it or others, it was ready, willing and able to serve. This order also directed that any such application be consolidated for purposes of hearing with the complaint proceeding. Thereupon, on January 17, 1963, Dublin filed its application at A.89823 requesting more ex-

tensive authority than asked at A.88148, namely, authority to serve all of the Upper Dublin Township north of the Pennsylvania Turnpike except territories served by the Borough of Ambler and Delaware Valley Industrial Water Company, including the Aidenn Lair tract then served by Suburban. Suburban protested Dublin's application at 89823. Following hearings the Commission on June 1, 1964 entered the order involved in this appeal. This order reviewed at length the needs of the public for water service in the contested areas, the capabilities of both Dublin and Suburban to furnish such service, and recognized Suburban's right to institute service in a given chartered area under the grandfather clause of the Public Utility Law, without specific approval of the commission. This order of June 1, 1964 reaffirmed the commission's order of April 16, 1962 dismissing the complaint at C.17661 as moot; denied Dublin's application at A.89823, without prejudice to file applications for additional service areas upon a definite showing of public necessity. The order urged a policy of cooperation between the two companies, and further directed Suburban to refrain from serving customers in areas certificated to Dublin "except in instances where Dublin Water Company fails to furnish service, and then only upon specific approval by the Commission." Dublin filed a petition for rehearing of the June 1, 1964 order, to which Suburban filed an answer. On October 19, 1964 the commission dismissed Dublin's petition for rehearing. Dublin has appealed to this Court.

First, appellant contends the commission erred in dismissing its complaint at C.17661 and in not enjoining Suburban from extending its mains into territory (the Aidenn Lair development) as to which appellant's franchise was pending; further, that Suburban had lost any rights it had to furnish service in the competitive area by reason of nonuser and abandonment.

. · Secondly, appellant contends the commission erred as a matter of law in denying its applications 88148 and 89823, since the uncontradicted evidence shows a need for the service in the requested area; that the finding of the commission to the contrary was unreasonable, not supported by evidence and an abuse of discretion upon the part of the commission. . .

. Our scope of review on appeal is well settled. We reverse the action of the commission only for error of law, violation of constitutional rights, lack of evidence to support the findings, or abuse of discretion: *Highway Express Lines, Inc. v. Pa. P. U. C.*, 195 Pa. Superior Ct. 92, 97, 169 A. 2d 798; *Chemical Leaman Tank Lines, Inc. v. Pa. P. U. C.*, 201 Pa. Superior Ct. 196, 205, 191 A. 2d 876; §1107 of the Act of May 28, 1937, P. L. 1053, 66 PS §1437. .

1. The commission ruled that, under existing law, Suburban's action in proceeding with its extension north along Dreshertown Road to Aidenn Lair, without first obtaining commission approval under §202 of the Public Utility Law, was proper, since Suburban operated prior to the advent of utility regulation in this state under the so-called grandfather exception. See Act of May 28, 1937, P. L. 1053, supra, §1401, 66 PS §1531. Suburban's vice-president and chief engineer, Myers, confirming his earlier testimony at A.88148, stated that Suburban's predecessor, Upper Dublin Water Company, was incorporated in 1898 with authority to furnish water service throughout all of Upper Dublin Township and that Suburban or its predecessor companies have continuously furnished water service (in the southeastern part of the township) since 1903. The law is settled that older non-carrier public utilities are vested with service rights throughout their charter territories which are not dependent upon the existence of facilities or the extent of service therein prior to the advent of the Public

Service Company Law in 1914. As stated in *Harmony Electric Co. v. P. S. C.*, 275 Pa. 542, 545, 119 A. 712, affirming 78 Pa. Superior Ct. 271: "The statute . . . does not contemplate that a certificate of public convenience shall be obtained by a corporation like the appellee,—which was already doing business on January 1, 1914,—for each step taken in the advancement of its service within unabandoned chartered territory." To the same effect see *Penna. Utilities Co. v. Lehigh Navigation Electric Co.*, 254 Pa. 289, 98 A. 950; *Penna. Utilities Co. v. P. S. C.*, 69 Pa. Superior Ct. 612; and *New Castle Electric Co. v. P. S. C.*, 70 Pa. Superior Ct. 20.

Appellant argues that Suburban's entry into the competitive area covered by Dublin's application without commission approval gave it an unfair advantage over Dublin. Appellant did not show that Suburban acted illegally in extending its mains to Aidenn Lair. The fact that Suburban did not legally require commission approval before extending its mains in chartered territory, is not controlling, nor does this fact, under existing law, give an unfair advantage to Suburban. In a dispute between a utility claiming rights under the grandfather clause, and another utility which has currently made application covering the same area, the commission clearly has jurisdiction. Cf. *General Telephone Co. of Penna. v. P. U. C.*, 192 Pa. Superior Ct. 563, 568, 161 A. 2d 906. In any event, the commission in the applications at A.88148 and 89823, considered all factors, including the need for the service in specific areas of the township, the public interest, and the respective capabilities of the competing parties to render service. It appeared that Dublin, incorporated September 2, 1958, was organized for the purpose of serving a limited portion of the northwest portion of the township known as Maple Glen, and as of 1962 served 200 customers and had three paid part time

employes in addition to its officers. At the 1961 hearing complaint by consumers of inadequate service was introduced. As stated, Suburban, under service inaugurated in 1903 by its predecessor, in 1962 served 2,000 customers in the south and east portions of the township. In addition Suburban has a two million gallon distribution storage reservoir and a 100,000 G.P.D. well in Upper Moreland Township near the area involved in these proceedings. Suburban has 439 full time employes and a unified system of offices and control centers, in this and other areas, with a view to furnishing adequate water service to consumers.

Thus it is apparent from the commission's orders at A.88148 and A.89823 and C.17661 that it did not give controlling weight to the fact Suburban had extended its main to Aidenn Lair, but rather based its decision on a holding that, under all the circumstances, the public interest would best be served by allowing Suburban's Aidenn Lair service to stand, while holding open the remainder of the disputed area pending developments and a showing of public necessity as to any part thereof.

The extent of competition between utilities is a matter within the administrative discretion of the commission: *Sayre v. Pa. P. U. C.,* 161 Pa. Superior Ct. 182, 54 A. 2d 95; *Painter v. Pa. P. U. C.,* 194 Pa. Superior Ct. 548, 169 A. 2d 113; *Merz White Way Tours v. Pa. P. U. C.,* 204 Pa. Superior Ct. 43, 48, 201 A. 2d 446. This court will not disturb the commission's action in areas committed by the legislature to administrative discretion, unless it is not supported by evidence, or is so arbitrary and capricious as to amount to an error of law: *Chemical Leaman Tank Lines, Inc. v. Pa. P. U. C.,* supra. Competition within the same territory by noncarrier public utilities such as water companies, is deleterious and not generally in the public interest: *Painter v. Pa. P. U. C.,* supra. As stated in the *Paint-*

*er.* case, supra, at page 555: ". . . where a utility such as a water company is already in the field and ready, willing, and able to make an extension into new territory, it should be given preference over a newcomer."

Appellant argues that Suburban refused to extend its service and has abandoned all of its charter territory in Upper Dublin Township in the area north of the Pennsylvania Turnpike. Undoubtedly charter rights to render service granted prior to 1914 can be lost by nonuser or abandonment: *Fogelsville & Trexlertown Electric Co. v. Pa. P. & L. Co.,* 271 Pa. 237, 114 A. 822; *Harmony Electric Co. v. P. S. C.,* supra; *General Telephone Co. v. Pa. P. U. C.,* supra. There is, however, no showing on the record that Suburban abandoned its charter rights within the disputed areas in this case. The record discloses a rural township which is gradually being converted by real estate development into suburban areas. Rather than relinquishing its charter rights, Suburban, by its Dreshertown Road extension, is shown to have been exercising such rights. The record shows that Dublin is not presently serving any of the area in controversy, rather it appears that Suburban is rendering service in the disputed area. At most any evidence as to abandonment by Suburban was conflicting and a matter for the commission to resolve. Suburban cannot be blamed for not extending its service in the absence of a definite public demand for service in the disputed area: *Sherman v. P. S. C.,* 90 Pa. Superior Ct. 523.

2. The commission's denial of Dublin's applications at 88148 and 89823 is supported by evidence, is not shown to be erroneous as a matter of law, and must be affirmed. Testimony offered shows that Dublin's present water supply is limited to one well; that considerable expansion of facilities will be necessary if appellant is to serve additional areas than those presently certificated. Dublin, through its executive head,

Mr. Seltzer, introduced evidence from landowners and developers (much of the land being controlled by appellant's officers) as to the need for service in the area. However, many of these plans for development were tentative. At most, the need for service in these areas, excluding the Aidenn Lair tract, was conflicting and, again, presented a factual question to be resolved by the commission. In resolving this conflict the commission found that no public necessity for water service presently existed in much of the area sought by appellant at A.89823. The commission reviewed the record and maps submitted by the parties and concluded that the solution of the problem of conflicting service areas could not be determined by drawing a line which would define and circumscribe the service territory of either Dublin or Suburban. The commission's order clearly protected Dublin's existing certificated rights as against Suburban, and allowed Dublin the opportunity for further expansion upon a definite showing of public necessity. Findings of the commission based on substantial competent evidence are conclusive: *Duquesne Light Co. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 568, 107 A. 2d 745; *Pittsburgh Rwys. Co. v. Pa. P. U. C.*, 198 Pa. Superior Ct. 415, 427, 182 A. 2d 80. The order of the commission in this appeal concerned matters peculiarly within the administrative discretion of the commission; no error of law is shown and the order must therefore be affirmed on appeal.

Order affirmed.

HOFFMAN, J., dissents.