## Philadelphia Suburban Water Company, Appellant, v. Pennsylvania Public Utility Commission.

Argued March 22, 1966.    Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Norman T. Hayes, Jr.,* with him *Robert H. Young,* and *Morgan, Lewis & Bockius,* for protestant, appellant.

*Miles Warner,* Assistant Counsel, with him *Edward Munce,* Assistant Counsel, and *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Milton Berger,* with him *James E. Riely,* and *Berger, Riely, Speese & Barol,* for applicant, intervening appellee.

OPINION BY ERVIN, P. J., June 17, 1966:

This is an appeal by Philadelphia Suburban Water Company (Suburban) from the order of the Pennsylvania Public Utility Commission dated August 9, 1965, granting the application of Dublin Water Company at A. 91503 authorizing Dublin to provide water service to two tracts of undeveloped land in Upper Dublin Township, Montgomery County, Pennsylvania. Protest to the application was filed by Suburban.

A previous order of the Commission, dated June 1, 1964, refused Dublin's application at A. 89823 to serve a large portion of Upper Dublin Township, dismissed Dublin's complaint at C. 17661, and approved Suburban's extension into a development known as Aidenn Lair. The 1964 order of the Commission was appealed and affirmed by this Court on September 16, 1965: *Dublin Water Co. v. Pa. P.U.C.,* 206 Pa. Superior Ct. 180, 213 A. 2d 139. Our opinion in that appeal sets forth the history of Dublin and its disputes with Suburban over rendition of water service in portions of Upper Dublin Township, prior to the present application.

In its present order of August 9, 1965, the Commission reviewed the facts showing organization and certification of Dublin as a public utility on September 2, 1958, serving an area known as Maple Glen in the

northwest portion of Upper Dublin Township. The Commission pointed to later extensions of Dublin's service area under Commission certification. These included two comparatively small areas to the east and a larger area to the west of Dublin's original territory.

Dublin's present application at A. 91503 covers the Boyce and Wentz tracts of 125 and 78 acres respectively. The Boyce tract is contiguous to the southern portion of Dublin's existing certificated territory. The Wentz tract, south and east of the Boyce tract, is separated by some 400 feet of territory not certificated and is approximately equidistant from the existing mains of Suburban and Dublin. Hearings were held December 2, 1964 and February 5, 1965. Dublin's evidence showed that it had entered into tentative agreements to furnish water service to the developers of these two tracts, subject to certification by the Commission. On January 21, 1965, Mr. Myers, vice-president of Suburban, wrote a joint letter to the owners of the two tracts offering to furnish service to the developments at a cost of $87,500 for the Louden development (Boyce tract) and $62,500 for the E. & W. development (Wentz tract). In granting the certificate to Dublin the Commission stated that Suburban did not "substantially impugn" Dublin's readiness and ability to furnish service to the two tracts in question. The Commission also stated: "We have no doubt that protestant could furnish efficient and satisfactory service to these developers by extending its present facilities to their tracts. However, protestant's ability to furnish service is not conclusive of the question of which of these two utilities should be authorized, even though Suburban, as above noted, holds a general authority, accrued prior to January 1, 1914, to serve. Smaller companies first allowed by us to be created and to serve under the Public Utility Law at times and in places where larger entities found service unattractive, should also be given

an opportunity to share in a region's general economic growth. Moreover, applicant's relatively small size, as compared to protestant's, makes it all the more desirable that it be able to distribute and allocate costs of plant and of operations among a sufficiently large number of patrons. These considerations, not controlling in the prior application proceedings where applicant did not show specific requests for service limited to specific tracts, we deem significant here. Of equal significance, in our opinion, is the fact that both of the tracts to which Dublin seeks to extend service are contiguous or nearly contiguous to its present territory and facilities, whereas the nearest places served by Suburban are more than a mile and a half away. . . ."

Suburban filed a petition for rehearing with the Commission of its order of August 9, 1965, together with a supplementary petition for rehearing, after our decision on September 16, 1965 in the former appeal of Dublin. Following denial of its petitions for rehearing, Suburban appealed to this Court.

A reading of the record shows that the essential facts are not disputed. The developers of the Boyce and Wentz tracts testified, on behalf of Dublin, that they had entered into tentative agreements with Dublin to furnish water service to the tracts, and that Suburban had offered to furnish them with such service. Dublin's engineer, Weir, testified as to the ability of Dublin to render water service and the physical set up of Dublin's plant. Suburban's witness, Mr. Myers, testified that Suburban had offered to supply water service to the tracts in question at substantially the same figure as it would, in the opinion of this witness, cost Dublin to furnish such service.

Dublin is a small company organized to promote real estate development in the area; it has a part time meter reader, a part time inspector, an engineer on re-

tainer, and provides maintenance under a service contract. Dublin has two wells in service, with a combined capacity of 504,000 gallons per day, and serves 437 customers. A third well is being added to its system. On the other hand, Suburban is a large company serving a 300 square mile area in suburban Philadelphia and has 427 full time employes and serves 192,422 customers, 2500 of them in Upper Dublin Township. Suburban maintains a control center in Bryn Mawr and an elaborate system to insure ample supply of water to all customers at all times, including emergencies produced by fires.

The controlling and paramount factor in granting a certificate of public convenience and necessity to a utility, such as a water company, is the public interest, that is, which utility would best serve the public in a given area: *Pittston Gas Co. v. Pa. P.U.C.*, 190 Pa. Superior Ct. 365, 375, 154 A. 2d 510; *Pa. Railroad Co. v. Pa. P.U.C.*, 199 Pa. Superior Ct. 158, 169, 184 A. 2d 111. In this connection it should be noted that the public interest to be served in cases like the present is that of the ultimate consumer or individual homeowner. He must pay the rates and rely upon the quality of service rendered by the utility.

The Commission's order in the present appeal is based on errors of law and must be modified. The Commission made no finding that the public interest would be served by granting Dublin's application as to both the Boyce and Wentz tracts. Instead the Commission's order shows it gave great weight to the economic interest of the utility (Dublin) in serving both tracts, as opposed to the public interest of the consumer in receiving the best service. As stated in *Pittston Gas Co. v. Pa. P.U.C.*, supra: "In passing upon an application for a certificate . . . the commission must consider the interest of the public, as distinguished from the interest of the corporation or individual making the application: . . . ."

In this case the geographic location of the tracts, with regard to the existing facilities of the two utilities involved, is most important. The Commission misstates and ignores controlling evidence when it declares that ". . . both of the tracts [Boyce and Wentz] to which Dublin seeks to extend service are contiguous or nearly contiguous to its present territory and facilities, whereas the nearest places served by Suburban are more than a mile and a half away. . . ." The Boyle tract is contiguous to Dublin's present territory. The Wentz tract is approximately equidistant from the existing facilities of both companies.

Under the admitted facts showing the Boyle tract is contiguous to Dublin's present territory, and granting Dublin's ability to serve this tract, the legal conclusion follows that the public interest would be served by granting this area to Dublin. Competition within the same territory, and overlapping service areas, by noncarrier utilities such as water companies, is deleterious and not generally in the public interest: *Painter v. Pa. P.U.C.*, 194 Pa. Superior Ct. 548, 169 A. 2d 113. Accordingly we are of the opinion that the Commission's order was proper and lawful in so far as it granted a certificate to Dublin covering the Boyle tract. However, we are also of the opinion that, under the same admitted facts of record, water service to the Wentz tract should be furnished by Suburban. As Suburban's facilities are at least equidistant to the Wentz tract, and its service as good as, or superior to that of Dublin, the conclusion follows that service to this tract by Suburban is clearly in the public interest. On the record the granting of Dublin's application as to the Wentz tract is not supported by evidence, is an abuse of discretion, and constituted error of law. Cf. *Chemical Tank Lines, Inc. v. Pa. P.U.C.*, 193 Pa. Superior Ct. 607, 628, 165 A. 2d 668, affirmed 406 Pa. 359, 178 A. 2d 698. Certification of Dublin as to the Boyle

tract only will give Suburban the right to serve the Wentz tract, resulting in the normal and logical expansion of the facilities of each utility to nearby or adjacent territory and will avoid competition by utilities within the same territory.

Reversed and modified with directions to refuse certification to Dublin as to the Wentz tract.

---

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

I concur in the action of the majority affirming the Commission's certification of Dublin as to the Boyce tract. In my opinion, however, the refusal to certify Dublin as to the Wentz tract is an unwarranted exercise of discretion.

The majority concludes that the granting of Dublin's application was not supported by the evidence, is an abuse of discretion and constitutes an error of law, because the Commission failed to consider the public interest as distinguished from Dublin's interest. Yet, the majority similarly concludes that it is in the public interest to grant such certification to Suburban without any basis for such a conclusion.

The majority does not dispute that Dublin is at least equidistant with Suburban to the Wentz tract, if it is not, in fact, closer. Nor does the majority dispute the finding of the Commission that Dublin is fully able to provide adequate service to the Wentz tract.

At the Commission's hearing, W. T. Weir, Dublin's engineer, testified at length as to the ability of Dublin to render the proposed service. We have been advised further that Dublin's third well is now completed and has a capacity of 804,000 gallons per day. Nathan R. Seltzer, applicant's secretary and chief officer offered evidence showing that Dublin's stockholders had ample funds to furnish capital for future expansion.

In addition, A. J. Westrum, secretary of E & W Corporation, developer of the Wentz tract, testified that the corporation had entered into an agreement with Dublin covering the cost of bringing a water distribution system to the tract. He further testified that he considered installation of service by Dublin to be less expensive than that offered by Suburban.

This evidence would certainly tend to support the Commission's conclusion that the Wentz tract should be serviced by Dublin. The only factor presented by the majority to support Suburban's claim is that it is an older and larger company. This alone does not establish, however, that Suburban can better serve the public in the area in question. Moreover, we should not, in my opinion, ignore the origin of the dispute between these companies. Dublin's creation, at its organizer's substantial risk and expense, was necessitated by Suburban's initial unwillingness to furnish service in sparsely inhabited areas far from its then existing facilities. Now that Dublin's initiative has brought public water service to the point of economic feasibility in central Upper Dublin Township, Suburban has expressed a belated willingness to serve. The Commission, under these circumstances, properly declined to permit Suburban to capitalize on its rival's efforts in a way which would substantially limit Dublin's further territorial growth in Upper Dublin Township.

If the Commission has erred in failing to make a determination as to public interest, however, we should not compound that error by making such a determination ourselves on the basis of an incomplete and inconclusive record. Since the majority concludes that a finding by the Commission on the question of public interest is an absolute requirement, I would then adopt Suburban's suggestion that, "All of the foregoing circumstances would suggest that the case should be remanded to the Commission for proper disposition of

the issues in the light of established law and the evidence of the record."