Philadelphia Suburban Water Company *v.*
Pennsylvania Public Utility
Commission, Appellant.

502

Argued December 5, 1966.   Before Bell, C. J., Mus-
manno, Jones, Eagen, O'Brien and Roberts, JJ.

*Miles Warner*, Special Counsel, with him *Joseph C.
Bruno*, Chief Counsel, for Pennsylvania Public Utility
Commission, appellant.

*James E. Riely*, with him *Milton Berger*, and *Stas-
sen and Kephart*, for appellant.

*Robert H. Young,* with him *Norman T. Hayes, Jr.,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 24, 1967:

This litigation is the latest episode in a long standing controversy between Philadelphia Suburban Water Company and Dublin Water Company over rights to provide water service in Upper Dublin Township.[1] Philadelphia Suburban Water Company [hereinafter Suburban] is a large, long established public utility through whose facilities water service is provided to roughly 200,000 customers in a 300 square mile area on the periphery of the City of Philadelphia. By virtue of "grandfather" rights acquired prior to formation of the Public Utility and Public Service Commissions, Suburban is entitled to provide water service in portions of Upper Dublin Township which have not been certificated to others by the commission.[2] In fact, however, Suburban's service facilities have been mainly confined to the eastern portion of the township. This is because of the certification of the southwestern and south-central portion of the township to companies not here involved and because of the relatively undeveloped character of the northwestern and north-central portions of the township.

Dublin Water Company [hereinafter Dublin] is a small company formed in 1958 to provide water service in a small area in the northwestern portion of the township. Since 1958, Dublin has filed a series of applications with the commission to obtain service rights throughout large portions of the northwestern and

---

[1] A more detailed history of the dispute than is presented here is contained in *Dublin Water Co. v. Pennsylvania Public Utility Comm'n,* 206 Pa. Superior Ct. 180, 213 A. 2d 139 (1965) and *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Comm'n,* 208 Pa. Superior Ct. 93, 220 A. 2d 369 (1966).

[2] See Act of May 28, 1937, P. L. 1053, §1401, 66 P.S. §1531.

north-central portions of the township. Dublin's efforts at certification to small areas immediately adjacent to its original franchise have not generally been opposed by Suburban and have been successful. On the other hand, Dublin's efforts to obtain certification to larger areas especially in the central and north-central portions of the township have been contested by Suburban and have heretofore been unsuccessful. It is important to note that one of the commission's reasons for rejecting Dublin's prior applications in these larger areas has been Dublin's failure to show a need sufficiently sizeable and definite to warrant the finding of public interest requisite to granting Dublin a certificate. Similarly, it should be borne in mind that these rejections were not intended forever to bar Dublin from the areas sought. As the commission said in its order of June 1, 1964, denying Dublin's last application before the instant one, the rejection was "without prejudice to the filing by Dublin Water Company of applications seeking specific additional service areas, provided that such applications are supported by definite commitments for service extension and definite showings of public necessity."

The instant litigation arises out of Dublin's application to provide service in two small tracts in the central portion of the township. The first of these tracts, containing about 125 acres and known as the Boyce tract, borders the southeastern corner of an area already certificated to Dublin. The second tract, containing about 78 acres and known as the Wentz tract, is located about 400 feet southeast of the southeastern corner of the Boyce tract. The strip of land separating the Boyce and Wentz tracts, as well as several hundred acres of the township to the west of the tracts have no public water service and have not been certificated to any water company. These areas are, of course, within the area subject to Suburban's "grand-

father" rights. Similarly, the Boyce and Wentz tracts are, until certification is final, subject to Suburban's rights.

Both the Boyce and Wentz tracts are in the process of being developed for residential use. For the developers of both tracts, securing water services is the last major obstacle to the beginning of construction. At proceedings before the Public Utility Commission it appeared that both developers had sought and obtained agreements with Dublin to provide water service. During those proceedings it also appeared that Suburban had, at a date later than Dublin, made offers of service acceptable to both developers.

From the record it appears that Dublin's proposal for service was as follows: 2300 feet of 10 inch main at an estimated cost of $16,200 would be constructed to reach that part of the Boyce tract closest to the area already certificated to Dublin. 2400 feet of 10 inch main at an estimated cost of $17,150 would be constructed through the center of the Boyce tract and another 2250 feet of 10 inch main at an estimated cost of $15,000 from the edge of the Boyce tract to the Wentz tract would be constructed to carry water to the Wentz tract. Dublin's proposed cost for interior distribution mains was $62,000 in the Boyce tract and $44,500 in the Wentz tract. Thus assuming the cost of the 10 inch main running through the center of the Boyce tract were equally divided between the developers, the cost of Dublin's proposal to the Boyce developer would be $86,775 and to the Wentz developer $68,-075.

By contrast, Suburban's offer to the developers involved the construction at no immediate cost to the developers of a 12 inch main leading from its terminus in the eastern portion of the township. About 6000 feet of this line would be required to connect Suburban's existing eastern facility with the Wentz tract

and an extension of slightly more than 3000 additional feet to carry the water from the Wentz to the Boyce tract. As to interior distribution lines, Suburban's offer to the Boyce developer was $87,500 and that to the Wentz developer was $62,500. Finally it should be noted that the proposed extension by Suburban of a 12 inch main to the Boyce and Wentz tracts would provide it with ready access to large portions of the as yet undeveloped and as yet uncertificated central portions of Upper Dublin Township.

After a hearing in which the above facts, among others, were presented to its examiner, the Public Utility Commission ordered that Dublin be certificated to both tracts. In its opinion the commission reviewed the history of the dispute between Dublin and Suburban and the evidence presented as to the respective abilities of Dublin and Suburban to serve the two tracts. The basis of the commission's decision was summarized in its concluding paragraph as follows: "Protestant's [Suburban's] evidence in this proceeding did not substantially impugn applicant's [Dublin's] readiness and ability to furnish service to the two tracts in question. It consisted in substance of a showing similar to that already of record, in the prior proceedings involving these parties, of its own readiness and ability to furnish the same service. We have no doubt that protestant could furnish efficient and satisfactory service to these developers by extending its present facilities to their tracts. However, protestant's ability to furnish service is not conclusive of the question of which of these two utilities should be authorized, even though Suburban, as above noted, holds a general authority, accrued prior to January 1, 1914, to serve. Smaller companies first allowed by us to be created and to serve under the Public Utility Law at times and in places where larger entities found service unattractive, should also be given an opportunity to

share in a region's general economic growth. Moreover, applicant's relatively small size, as compared to protestant's makes it all the more desirable that it be able to distribute and allocate costs of plant and of operations among a sufficiently large number of patrons. These considerations, not controlling in the prior application proceedings where applicant did not show specific requests for service limited to specific tracts, we deem significant here. Of equal significance, in our opinion, is the fact that both of the tracts to which Dublin seeks to extend service are contiguous or nearly contiguous to its present territory and facilities, whereas the nearest places served by Suburban are more than a mile and a half away . . . ."

From the order of the commission, Suburban appealed to the Superior Court, which affirmed the decision of the commission as to the Boyce tract, but as to the Wentz tract reversed with directions to refuse certification to Dublin.[3] From this reversal, the commission and Dublin petitioned for an allowance of appeal which was granted by us.[4]

The Superior Court's reversal of the commission's certification of Dublin to the Wentz tract was based on two grounds. First, the Superior Court concluded that the commission had failed to consider the public interest as opposed to Dublin's interest. Second, the court believed that the commission had misstated and ignored controlling evidence in concluding that distance factors militated in favor certificating Dublin to the Wentz tract.

---

[3] HOFFMAN, J., dissenting.

[4] Suburban opposed the petition for allowance of appeal and did not take any appeal from the certification of Dublin to the Boyce tract. We therefore do not regard those few sentences of Suburban's brief in which it suggests that this Court should reverse the orders below regarding the Boyce tract as properly raising that question.

As regards those aspects of the public interest determination distinct from the question of the proximity of Dublin and Suburban to the Wentz tract, it is important to note at the outset that the commission's discretion must be accepted by the courts unless totally without support in the record, based on an error of law or unconstitutional. Act of May 28, 1937, P. L. 1053, §1107, as amended, 66 P.S. §1437; *Pittsburgh v. Pennsylvania Public Utility Comm'n*, 370 Pa. 305, 315-16, 88 A. 2d 59, 64 (1952). Moreover, we do not believe that the fact that the commission couched its finding in language which appears directed toward Dublin's interest necessarily shows an abuse of discretion, if it is fairly inferrable that the interest of Dublin sought to be promoted is in this case identifiable with the public interest. Although the language of the commission's order quoted above is not as helpful as it should be in this respect, we think that a consideration of that language in light of the commission's brief on appeal, the prior history of the relations between Dublin and Suburban summarized in the commission's order, and the notes of testimony at the hearing before the commission's examiner justifies the conclusion that Dublin's interest is identifiable with the public interest in this case. In our view that identity of interest is twofold. First, as the briefs and record suggest, the expansion of Dublin into the Wentz tract as well as the Boyce tract will enable it to expand its customer base thereby providing impetus for the expansion of Dublin's admittedly limited facilities. Such expansion, the commission apparently believes, will be beneficial to the public interest throughout that part of the township presently certificated to Dublin because Dublin's service will thereby probably become more dependable, and possibly cheaper.[5] Second, expansion of Dub-

---

[5] In its brief Suburban earnestly urges that the commission had no basis in this record or in fact for a conclusion that expan-

lin into the Wentz as well as the Boyce tract will benefit the public interest, the commission, argues because it will serve to demarcate the probable future expansion by Dublin and Suburban, and thus reduce competition between them which the commission deems undesirable to the public.

Suburban urges that the commission's argument with respect to delimiting spheres of competition is inadmissible in this case because the record does not contain "any evidence whatsoever on the subject." While it is true that the proceeding before the commission's examiner was not addressed to the issue of future service to those several hundred undeveloped acres of the township which Dublin would have an advantage in serving were both the Boyce and Wentz tracts certificated to it, we think the prior history of the disputes between Dublin and Suburban, specifically referred to in the commission's opinion, gave it an adequate basis for resolving this issue.

Suburban also complains that the commission's decision is unsupportable insofar as it encourages Dublin's expansion into and hence competition in territory covered by Suburban's "grandfather" rights, relying principally on language in *Metropolitan Edison Co. v. Public Serv. Comm'n*, 127 Pa. Superior Ct. 11, 191 Atl. 678 (1937) and *Painter v. Pennsylvania Public Utility Comm'n*, 194 Pa. Superior Ct. 548, 169 A. 2d 113

---

sion of Dublin's market would enable Dublin to reduce unit costs of service. The record does include, however, a detailed financial statement of Dublin's operations, as well as evidence of the cost of Dublin's proposed expansion and the financial resources of Dublin's owners. Moreover, throughout this proceeding Suburban has urged the superiority of the service it can provide because of its far greater facilities. Against this background, we do not believe that the commission abused its discretion in determining that the public already being served by Dublin in the township would be benefited by Dublin's being given an incentive to expand its facilities.

(1961). We do not believe that the language cited by Suburban when read in the factual context of those cases supports Suburban's position here. The *Metropolitan* case, for example, involved an application by one power company for service rights in an area where another service company already had facilities. In overturning the Public Service Commission's grant of rights to the second company, the Superior Court noted that its proposed distribution system was "to be a duplicate of the system" of the existing utility, 127 Pa. Superior Ct. at 15, 191 Atl. at 680 and noted that "public utilities, if they . . . [render] adequate service to the public at reasonable rates, . . . [can] expect to be protected from unfair and ruinous competition." 127 Pa. Superior Ct. at 20, 191 Atl. at 682. Thus the *Metropolitan* case is clearly distinguishable from the instant case by the fact that Suburban's facilities are some distance away from both the Boyce and Wentz tracts and hence will not be duplicated by Dublin's facilities and by the fact that the competition between Dublin and Suburban cannot therefore be characterized as unfair or ruinous.

From the *Painter* case, Suburban seeks to rely on the following language: "Competition within the same territory by noncarrier public utilities, such as water companies, is deleterious and not in the public interest, save in rare instances." 194 Pa. Superior Ct. at 551, 169 A. 2d at 115. ". . . where a utility such as a water company is already in the field and ready, willing and able to make an extension into new territory, it should be given preference over a newcomer." 194 Pa. Superior Ct. at 555, 169 A. 2d at 117.

Neither of these quotations in our view aids Suburban. The first quotation is inapposite because the commission's decision is designed—and reasonably so in our view—to reduce rather than increase the already existing competition between Dublin and Suburban in

Upper Dublin Township. Moreover, it should be remembered that in *Painter* the Superior Court also remarked that "the extent of competition in any field of public utility service is a matter of administrative discretion committed by the legislature to the commission . . . ." Ibid. The second quotation from *Painter* relied upon by Suburban fails to support its position because Dublin, unlike the "newcomer" referred to in *Painter,* is not a company which has never before provided water service to the public.

As regards the respective distances between the Wentz tract and Suburban's and Dublin's facilities and territories, we are compelled to agree with the Superior Court that the concluding statement in the portion of the opinion of the commission quoted above is so inadequate a description of the facts in the record as to be without the requisite support therein. The commission's characterization of the proximity of "both" tracts as being "contiguous or nearly contiguous" to Dublin's facilities while Suburban's facilities are more than a mile and a half away is simply not supportable as to the Wentz tract on a record wherein it appears that Dublin's proposal for service to Wentz called for the extension of its mains 6950 feet to the Wentz tract.[6] It is true, of course, that to serve both tracts Dublin would propose to install only 6950 feet of approach mains whereas Suburban would install about 9300 feet, and there may be a significance in that on which the commission may properly rely. But

---

[6] In its brief on appeal Dublin contends that it will have to extend its mains only 3500 feet to the Wentz tract. Dublin fails to indicate what in the record even faintly suggests this figure, nor has our examination of the record revealed the slightest support for this figure. Indeed, at the hearing before the commission's examiner Dublin's own engineer testified on direct examination that mains would be brought 6950 feet by Dublin to serve the Wentz tract.

the description made by the commission does not, even liberally read, point to that consideration or any other of several inferences possibly drawn in favor of Dublin which this Court could imagine.

Were it not for the stated reliance placed by the commission on its description of the proximity of Dublin to the Wentz tract we would be willing to permit the commission's order to stand, since we believe that the other criteria advanced by it, as well as criteria not specifically suggested, but inferrable from the record, would support the certification of Dublin to the Wentz as well as the Boyce tract. Neither this Court nor the Superior Court, however, was intended by the Legislature to weigh the various factors entering in the granting of a certificate of public convenience and necessity by the commission, see *Pittsburgh v. Pennsylvania Public Utility Comm'n*, 370 Pa. 305, 318, 88 A. 2d 59, 66 (1952). That being so, we see no alternative but to remand the question of the Wentz tract to the commission for further consideration.

The order of the Superior Court reversing the order of the commission with directions is reversed; the order of the commission certificating Dublin to the Wentz tract is vacated and the record remanded to the commission for consideration not inconsistent with this opinion.

Mr. Justice COHEN took no part in the consideration or decision of this case.