Platt et al., Appellants, *v.* Philadelphia.

Argued September 25, 1956; reargued March 22, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*M. E. Maurer,* with him *S. C. Nissenbaum,* and *Wexler, Mulder & Weisman,* for the appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *David Berger,* City Solicitor, for appellee.

OPINION BY ERVIN, J., June 11, 1957:

In this action in assumpsit Martin Platt and Joseph Rosenberg, appellants (hereinafter called landlords), sought to recover damages from the City of Philadelphia, appellee (hereinafter called tenant or City), for breach of a covenant to repair the demised premises. The City occupied the garage, under a written lease, for the full term of two years and eleven months and paid the landlords $350.00 a month during the entire period of occupancy. The garage was used by the Bureau of Highways and Street Cleaning. The City entered an appearance but filed no answer to the complaint. At the trial, before a judge without a jury, the landlords offered in evidence all of the paragraphs of the complaint. The complaint alleges that on January 7, 1947 the City of Philadelphia and the plaintiffs entered into a written lease for premises 3032 to 3046 West Sedgley Street, Philadelphia, Pa., a copy of the lease being attached to the complaint; that pursuant to the terms of the lease, the City entered into possession of the premises on or about February 1, 1947, and remained in sole and exclusive possession thereof until the end of the term; that when the City entered into possession of the premises, a concrete footway, driveway and guard rail were in good order and repair; that during the occupancy by the City, it permitted the driveway to become cracked and broken to the extent that it became dangerous, it permitted the curb to become broken, the footway to become cracked and broken, and the guard rail to be removed; that

under the terms of its lease, the City was required to correct and repair this damage, which the City has failed, neglected and refused to do; that the fair, reasonable and market value of restoring the footway, driveway and guard rail to the condition they were in at the time the City took possession of the premises is $1,680.00.

Paragraph 6 of the lease is as follows: "LESSOR AGREES to keep and maintain the roof in good order and repair and make necessary structural repairs to the building not occasioned by Lessee's negligence, during the continuance of this lease, upon receipt of notice in writing from Lessee, when such repairs are necessary. *All other repairs shall be made by Lessee at its sole cost and expense at all times while this lease is in effect."* (Emphasis added)

The City objected to the offer for the reason that, while the action was in assumpsit, in reality it sounded in tort. The City argued that the basis of the complaint is the neglect of the City to keep the premises in repair; that the rules of civil procedure governing actions in trespass should apply; that the averments of negligence and damages "shall be deemed to be denied" even though no answer be filed. Pa. R. C. P. No. 1045.

On the other hand, the landlords argued that this was an action in assumpsit for the breach of a written covenant of the tenant to repair and keep in repair; that nothing in the complaint could be construed as an averment of negligence; that the rules of civil procedure governing actions in assumpsit should apply and that "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa. R. C. P. No. 1029(b).

The City was given an opportunity to put in a defense but declined to do so.

The City moved for a nonsuit and the landlords moved for a finding in their favor. After taking the matter under advisement, the trial judge granted the City's motion for a nonsuit. After the dismissal of its motion for judgment n.o.v.[1] by the court in banc, the landlords appealed.

At the outset we must determine the pivotal question of whether this is solely an action in assumpsit or an hybrid action in assumpsit sounding in tort.

The City argues: "Any obligation of the City to make repairs could only arise in the instant case by virtue of the relationship between the parties since the lease did not impose any duty to maintain the premises. Hence, liability could be enforced only for tortious conduct." It further argues that the last sentence of paragraph 6 in the lease "is more consistent with an obligation to make any repairs which it deems to be necessary or desirable at its own expense, than an undertaking to keep in good order and repair." We do not construe the language in this manner. The important sentence reads: "All other repairs shall be made by Lessee at its sole cost and expense *at all times while this lease is in effect.*" (Emphasis added) If the sentence had ended with the word "expense" a better argument could be made for the City's position. The words "at all times while this lease is in effect" clearly indicate that the premises shall be kept in repair every day that the lease continues. The word "shall" was used and not the word "may." To us this sentence

---

[1] This was designated a motion for judgment n.o.v. but was actually a motion for judgment in favor of the plaintiffs upon the whole record. See our opinion on the motion to quash the appeal filed November 13, 1956 and reported in 183 Pa. Superior Ct. 480, 133 A. 2d 857.

means that the tenant will keep the premises in repair throughout the entire period of the lease and will deliver the premises at the end thereof in the same state of repair as when the lease commenced. The usual limitation "excepting reasonable wear and tear" is not found in this lease. Now, of course, the premises may have come into disrepair either through the negligence of the tenant or they might have come into disrepair because of ordinary wear and tear by the tenant or because of some act committed by third persons. In either event, as we construe this lease, the tenant would have the obligation to make the repairs. Where the covenant to repair on the part of the lessee is expressed unconditionally the lessee must restore the premises to their former state, even though they have fallen into disrepair without any fault of the lessee. Where the parties have by their express contract not limited their obligation, the law will not imply a limitation. *Hoy v. Holt,* 91 Pa. 88, 90, 91, 92; *McKinley v. C. Jutte & Co.,* 230 Pa. 122, 79 A. 244. Even though a lease does not contain an express covenant to repair, the law will imply one upon the part of the tenant but it is a defense to an action on the implied covenant for failure to repair where the damage occurred without fault on the lessee's part. *Earle v. Arbogast & Bastian,* 180 Pa. 409, 416, 417, 36 A. 923. "The difference in the limitation of liability on the lessee where he has expressly covenanted to repair and where the law implied the covenant is that 'When a law creates a duty or charge and the party is disabled to perform it without any default in him and hath no remedy over' then the law will excuse but when the party by his own contract creates a duty or charge upon himself he is bound to make it good if he may notwithstanding any accident by inevitable necessity because he might have provided against it.[31] . . . 31 Hand v. Baynes, 4 Whart. 204

(1838); Hoy v. Holt, 91 Pa. 88 (1879); McKinley v. Jutte & Co., 230 Pa. 122 (1911)." Stern's Trickett on the Law of Landlord and Tenant, 3d ed., p. 69; also pp. 67, 68.

The City also argues that where a municipality agreed to return the leased premises in as good shape as when received, the lessee could be held responsible only if the property was damaged as a result of the lessee's negligence and cites *Brinton v. School Dist. of Shenango Twp.*, 81 Pa. Superior Ct. 450, as authority. That case merely decided that where the jury found the damage was caused by the negligence of the school district, it could be held liable therefor. Judge KELLER, in that opinion, at p. 452, said: "When, however, a state agency or instrumentality, authorized to enter into a contract in the performance of its governmental functions or duties, fails to perform, whether negligently or otherwise, that which it has legally agreed to do, there is no public policy which forbids its being required to fulfill its obligations or pay the damages consequent upon its failure to do so: Hagan Lumber Co. v. Duryea School Dist., 277 Pa. 345. Thus in Bostwick v. U. S., 94 U. S. 53, the Supreme Court, (WAITE, C. J.), said: 'The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf. All obligations which would be implied against citizens under the same circumstances will be implied against them.' "

The City also cites *Southern Steamship Co. v. Hull*, 46 Pa. Superior Ct. 299, for the proposition that even though an action be brought in assumpsit, if it sounds in tort a judgment for the want of a sufficient affidavit of defense may not be entered. In that case, and in others cited by the City, it was clear from the averments in the pleadings or the evidence that the action

sounded in tort and was based upon negligence.[2] There is not a word, phrase or sentence in the complaint which charges the City with a breach of a duty apart from a nonperformance of its covenant to repair. On the contrary, the complaint describes a case in assumpsit and nothing else. We conclude that the lower court was in error in nonsuiting the plaintiff.

The City also argues that judgment may not be entered for the plaintiffs where the damages are not fixed by the contract or their amount intrinsically established and where they must be determined by the opinion of witnesses, citing as authority therefor *Cowan v. Nagel,* 89 Pa. Superior Ct. 122; *Coyle v. Schrull,* 49 Pa. Superior Ct. 386; *Bilk v. Abbotts Dairies, Inc.,* 147 Pa. Superior Ct. 39, 23 A. 2d 342; and certain other cases which it is not necessary to refer to specifically. In these cases negligence was spelled out in the pleadings or clearly appeared in the evidence and the action was essentially one of tort even though brought in assumpsit. This being so, the item of damages was not admitted and the plaintiff had the duty of proving the same at the trial. In the present case we have determined that this is not an action sounding in tort. It is an action in assumpsit and the averment of damages in the complaint, if not properly denied, will be taken as admitted. Of course, the complaint must set forth the proper measure of damage. Paragraph 9 of the complaint is as follows: "That the fair, reasonable and market cost of restor-

[2] See also *Stanton v. Phila. & Reading Railway Co.,* 236 Pa. 419, 84 A. 832; *Coyle v. Schrull,* 49 Pa. Superior Ct. 386; *Fitzpatrick v. Rogers,* 75 Pa. Superior Ct. 273; *Brinton v. School Dist. of Shenango Twp.,* 81 Pa. Superior Ct. 450; *Cowan v. Nagel,* 89 Pa. Superior Ct. 122; *Bilk v. Abbotts Dairies, Inc.,* 147 Pa. Superior Ct. 39, 23 A. 2d 342; *Siegel v. Struble Bros., Inc.,* 150 Pa. Superior Ct. 343, 28 A. 2d 352.

ing the footway, driveway and guard rail to the condition that they were in at the time the defendant took possession, is $1680.00 . . . . ." This clearly stated the proper measure of damages for the breach of the covenant to repair. The case of *Jones v. Dubuque F. and M. Ins. Co.*, 317 Pa. 144, 176 A. 208, was an action on a policy of insurance based on a loss caused by fire. A paragraph in the statement of claim was offered, with a specific averment as to value. The affidavit of defense simply denied this statement generally. The court below held that the denial of the amount of the loss was insufficient and the appellate court affirmed. Mr. Justice KEPHART, later Chief Justice, in that opinion said, at p. 147: "The purpose of requiring more definite affidavits is to make it possible for a plaintiff to recover judgment for amounts that are admitted to be due." To like effect see *Woods v. Marietta Chair Co.*, 37 Pa. Superior Ct. 39; *Archbald v. Stone,* 91 Pa. Superior Ct. 268. If the City desired to put in issue the question of damages, it should have denied that the sum of $1,680.00 was the fair, reasonable and market cost for the repairs and should have averred the amount which it claimed to represent the correct charge.

For the first time in the appellate court, the City argued that the lease was defective in four respects, (1) it was not authorized by City Council, (2) it was not signed by an officer authorized to sign it, (3) it was not certified by the City Controller, and (4) there was not a sufficient appropriation to cover the cost of the repairs for which claim is here made. While ordinarily matters not raised in or considered by the court below cannot be invoked on appeal, even though they involve constitutional questions, the appellee may advance additional reasons to sustain the decree of the court below. In *Sherwood v. Elgart,* 383 Pa. 110, 115,

117 A. 2d 899, it is said: "The rule here applicable is that a correct decision will be sustained if it can be sustained for any reason whatsoever; in other words we will not reverse in such a case even though the reason given by the Court below to sustain its decision was erroneous. . . ." In all of the cases which we have read wherein this rule was applied, the record as made in the court below was sufficient to permit the raising of the additional reasons. In none of them did the appellee endeavor to offer additional evidence in the appellate court. The City asks us to take judicial notice of the city charter and of certain ordinances of the City and then to decide that the lease in the present case was not executed by the proper officers. The record as made in this case contains the undenied averment of paragraph 3 of the complaint: "The said lease was entered into on behalf of the defendant by Thomas Buckley, the Director of Public Works, a city official authorized and empowered to enter into the said instrument for the City of Philadelphia." Judicial notice is a means of proof before a fact finding tribunal. 9 Wigmore on Evidence, 3d. ed. §2565. It is a dispensation to one party from producing evidence but the party must request it. The City did not request the court below to take judicial notice of the city charter or any ordinances under it which it now claims are controlling. It now assumes that it has the right to produce this evidence for the first time and that this Court should take judicial notice of the same. In Line v. Line, 119 Md. 403, 86 A. 1032 (Md. Ct. of App. 1913), it was held that an appellate court could not take judicial notice of facts but that only the trial court could do so. Prior to the Act of April 8, 1941, P. L. 16, 28 PS §301, ordinances were proved like any other fact. That Act, however, brought ordinances within the rule of judicial notice but left it to the discretion of the

court on the means it used to obtain requisite data. Section 2, 28 PS §302, provided: "The court may inform itself of such ordinances in such manner as it may deem proper and the court may call upon counsel to aid it in obtaining such information. A certified copy of such ordinance shall be prima facie evidence of the existence thereof." The phrasing of this section seems to contemplate the judicial notice of ordinances at a trial rather than on appeal.

The City also asks us to declare the lease invalid because it was not authorized by City Council and again asks us to take judicial notice of the ordinance of May 23, 1878, which, in short, provides that no contract or lease shall be binding upon the City unless previously confirmed by the select and common councils. This ordinance should have been called to the attention of the lower court if the City wanted it in evidence.

The City also asks us to take judicial notice of the City Charter Act of 1919 and the part which prohibits liability under any contract not supported by a previous appropriation of council. To decide whether the lease is invalid for this reason we would also have to take judicial notice of the appropriation ordinances, the amounts previously expended and the balances on hand at the time in question. If an appellate court should permit evidence of this character to be presented to it, appeals would be interminable and issues never limited. Should we permit such a practice, the appellant would be greatly handicapped in that he could not secure counter-evidence even if it were possible for him to do so.

We think that the rule of law which permits the appellee to advance new reasons to support the lower court's decree should be limited to such reasons as can be raised from the record as made in the lower court.

498

We refuse to permit the appellee the privilege of offering additional evidence in the appellate court.

Judgment reversed and the record remanded to the lower court for entry of judgment in favor of the plaintiffs in the amount of $1,680.00 with interest from January 1, 1950.