Merz White Way Tours, Appellant, *v.*
Pennsylvania Public Utility
Commission.

44

Argued March 17, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John Stewart,* with him *Blair F. Gunther,* and *Raspin, Espenshade, Heins, Erskine & Stewart,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Harry H. Frank,* with him *Gilbert Nurick,* and *McNees, Wallace & Nurick,* for applicant, intervening appellee.

OPINION BY FLOOD, J., June 12, 1964:

This is an appeal by Merz White Way Tours from a final order of the Pennsylvania Public Utility Commission, dated July 10, 1963, granting the intervening appellee, Gray Line Motor Tours, Inc. authority to extend its certificate so as to "transport, as a common carrier, groups and parties of persons, persons on special excursions and tours or sight-seeing trips" between points in the City of Philadelphia and from points in Philadelphia to other points in Pennsylvania but refusing a requested extension to enable it to render group and party service from points on the Main Line suburban area of Philadelphia to points in Pennsylvania for lack of showing of public necessity.

Gray Lines' existing authority consisted of the right to transport persons in groups and parties within the City of Philadelphia, and from Philadelphia to points within 25 miles thereof, to Bethlehem during the Christmas season, and to Gettysburg by way of Harrisburg. It also holds interstate authority to conduct round trip charter transportation between Philadelphia and points and places in New Jersey, Delaware, Maryland and the District of Columbia.

The application was protested by five carriers, including the appellant. The commission held extensive hearings on the application, and after the receipt of briefs, entered a short form order, on April 8, 1963, extending Gray Lines' rights to the extent mentioned and, after certain other proceedings on July 10, 1963, entered the long form order from which this appeal is taken.

Of the five protestants, only Merz White Way Tours, Inc. is appealing. Merz has interstate authority as a charter and excursion carrier to transport from Philadelphia, and points within fifty miles from City Hall, to places and points in eleven states. Its intrastate authority is similar to that granted Gray Line in the present order. It includes group and party service, special excursions and tours from points in Philadelphia to points in Pennsylvania and between points in the City of Philadelphia. Greyhound Corporation also has, in addition to its regular routes, limited authority to conduct groups and parties from Philadelphia to points and places in Pennsylvania.

1. Merz contends that there was insufficient proof of the need for the authorized service, or that the existing service was inadequate.

The commission found that "there is a public need for a general intrastate tour and excursion service from Philadelphia origins which is not being met by existing authority and which this applicant is pecu-

liarly fitted to promote and to stimulate, as well as to fill." This finding, if supported by the evidence, is sufficient to justify the commission's order. *Pa. R. R. Co. v. Pa. P. U. C.,* 199 Pa. Superior Ct. 158, 184 A. 2d 111 (1962). There is ample evidence in the present record to support this finding.

Gray Line introduced evidence that it specializes in group and party, tour and sightseeing service. Although an independent company, it is affiliated with the national Gray Lines Association which distributes about 92,000 copies of the local Gray Lines tour pamphlets annually. Gray Line has ticket agents at some twenty-three locations in Philadelphia and its tours are advertised and sold in the local Greyhound Terminal in Philadelphia. Many of its buses are equipped with public address systems and air conditioning. It employs sixteen drivers especially trained for sightseeing work. Six of these are full-time employes.

Sixteen public witnesses testified in support of the application. Nine of them, comprising travel agents and representatives of business and social groups, testified, in substance and at length, to the need for additional group and charter service from Philadelphia, and to their dissatisfaction with existing service. They found applicant's service excellent in instances where they had used it. Gray Line also introduced a sheet showing requests for tour service in Pennsylvania which it could not render under existing authority. This included such destinations as Crystal Cave at Kutztown, Hershey, Pittsburgh, Lancaster and Reading.

The appellant vigorously attacks the competency, lack of experience with the existing service, and credibility of the applicant's witnesses and the weight of their testimony, and points to the self-interest of some of these witnesses, who were travel agents. It is true that some of the testimony of the applicant's witnesses was contradicted or modified by cross-examination and

by testimony of officers of protestants. However, the total effect of this was to produce no more than a conflict of testimony, which was for the commission to resolve. The testimony was admissible and relevant and, in our opinion, competent. Therefore, its weight was for the commission as the fact finding body. *New Kensington City Lines v. Pa. P. U. C.,* 200 Pa. Superior Ct. 490, 190 A. 2d 179 (1963).

Where there is evidence to support the commission's finding of a public need for the service, the extent of competition in a given territory is a matter within the administrative discretion of the commission. *Chemical Tank Lines, Inc. v. Pa. P. U. C.,* 193 Pa. Superior Ct. 607, 165 A. 2d 668 (1960).

Although almost all of the testimony of these witnesses related to charter service, the testimony warrants the commission's conclusion that another sightseeing service in the same area should also be authorized. The appellant contends that the order is based upon "speculation of potential undeveloped need". The testimony, however, is such as to warrant a finding of present unfulfilled demand, and to indicate that this demand would be much greater if service were actually offered.

2. The appellant contends that the evidence does not support the commission's finding that Gray Line was fit and qualified to render the service.

It first asserts that the applicant is in bad financial condition. Gray Lines was a family corporation, Leslie Rawding, its founder, retired in favor of his sons, Leslie, Jr. and Wilbur. After Leslie Rawding, Jr. died, Charles Lorenz was employed in 1961 as the applicant's secretary-treasurer and general manager. [Later the estate of Leslie Rawding, Jr. transferred its seventy-five shares of the applicant's stock to the treasury in return for its note for $25,972.10. Simultaneously the corporation agreed to sell these shares

to Lorenz. He paid $9,000 cash for thirty shares and agreed to buy the other forty-five within five years if he remained with the company for that period. However, all seventy-five shares were endorsed in blank by Lorenz and pledged with Delaware Valley Factors, Inc., for loans totalling $78,261.72.] In July 1962, Wilbur Rawding resigned as president and Lorenz assumed full operational control and at the same time the senior Rawding "forgave" an indebtedness of $48,388 due him from the company.

The Gray Lines balance sheet, as of December 31, 1961 showed a deficit of $23,405.77, which increased to $42,238.15 on May 31, 1962, but the balance sheet of August 31, 1962 shows a deficit of only $531.21. This improvement apparently resulted from the cancellation of a $48,388.22 debt to Leslie Rawding, Sr., the former owner of the company, since a statement of applicant's operations for the eight months ending August 31, 1962 showed an operating loss of $14,230.53. It appeared that two new buses, costing $58,000, had been purchased entirely from borrowed funds.

However, the commission found that while applicant's financial position was "precarious", it was nevertheless "in possession of sufficient staff, vehicles, equipment, and operating skill to make the proposed enlargements to its present business feasible, profitable, and a distinct service to the public". The commission pointed to the increased leisure of the general population and to the increasing demand for group and party, tour and excursion service. In other words, the commission found that applicant was in a position to, and should be given an opportunity to, fulfill a definite public need for the service sought and that a large part of the company's difficulties stemmed from the failure of the prior management seasonably to sense this opportunity. The order of the commission in this respect is not clearly shown to be without support in the

evidence or so arbitrary, capricious and unreasonable as to amount to an error of law. *Slater v. Pa. P. U. C.,* 173 Pa. Superior Ct. 404, 410, 98 A. 2d 743, 746 (1953). The interest of the public in availability of the new service is paramount (*Pa. R. R. v. Pa. P. U. C.,* supra), and where the need of the new service is shown the commission's action on the question of applicant's fitness will not be readily overturned by the court. *Highway Express Lines, Inc. v. Pa. P. U. C.,* 161 Pa. Superior Ct. 98, 54 A. 2d 109 (1947).

The appellant objects that the commission found the former management incapable, that Wilbur Rawding, one of the former owners, still owns fifty per cent of the stock, that the other fifty per cent was purchased by the corporation when insolvent and resold to Lorenz[1] who pledged it with Delaware Factors, Inc., on a loan to the corporation. It argues that Lorenz, who became general manager in 1961, does not have control under these circumstances. However, the testimony indicates that Lorenz is in control as general manager, whatever power Wilbur or Delaware Factors might have to replace him under certain unspecified circumstances in the future.

Appellant also questions the credibility of Lorenz, attacking his testimony as to the licensing of applicant's vehicles during 1961-62, and the unreliability of his testimony regarding applicant's financial condition. The commission, however, acted within its discretion in concluding that the "gross carelessness not unmixed with evasiveness", of Lorenz' testimony was not a sufficient reason to refuse the application, in view of the weight of the reasons cited in the commission's opinion for granting it.

---

[1] Thirty shares were sold outright to Lorenz for cash and he contracted to buy the other forty-five within five years, if he remained so long with the company.

Appellant also points to evidence that applicant had engaged in illegal operations in excess of its certificated authority. The commission found, however, that any operations in excess of its certificated authority were not wilful or in open defiance of the commission's authority and that applicant was not disqualified on this basis. The commission could properly determine in this case that such prior violations of certificated rights or limitations did not render applicant unfit. *Highway Express Lines, Inc. v. Pa. P. U. C.*, supra; *Slater v. Pa. P. U. C.*, supra. The evidence of unauthorized operation is in no way comparable to that which drew the condemnation of the court in *D. F. Bast, Inc. v. Pa. P. U. C.*, 397 Pa. 246, 154 A. 2d 505 (1959).

3. The commission's refusal of Merz' petition for a subpoena duces tecum was not a denial of due process. The matters sought to be produced under the subpoena were brought out at later hearings and by exhibits filed after the close of the hearings. The commission's action on the subpoena may be reversed only for abuse of discretion. Where the evidence sought is merely cumulative, as here, this discretion is particularly broad. *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 422, 85 A. 2d 646, 652 (1952).

Likewise, the question of whether or not the commission shall open the record after the case is closed, and grant further hearings, is a discretionary matter and the commission will be reversed only if the discretion is abused. As stated in *Pittsburgh v. Pa. P. U. C.*, 174 Pa. Superior Ct. 224, 232, 101 A. 2d 127, 131 (1953) : "The presence of incompetent evidence or the exclusion of admissible evidence does not necessarily require the reversal of an order of the commission unless the action of the commission in ruling thereon constitutes clear error of law fatal to the order or is so

arbitrary as to amount to a denial of due process". See also *Pa. Publications, Inc. v. Pa. P. U. C.*, 152 Pa. Superior Ct. 279, 291, 32 A. 2d 40, 46 (1943); 9 Standard Pennsylvania Practice, §198, p. 526.

The hearings extended over a period from April 24, 1962 to October 25, 1962. Subsequent to the last hearing and pursuant to an agreement of the parties Gray Line filed four additional documentary exhibits numbered 16 to 19, inclusive, on October 29, 1962, whereupon the appellant and two other protestants petitioned for re-opening of the record alleging that Gray Line had concealed the amount of its indebtedness to Delaware Valley Factors, Inc., and that its secretary-treasurer and principal witness, Charles Lorenz, had misrepresented and concealed the true financial condition of the company. The commission denied this petition on the ground the record as made contained sufficient testimony, both supporting and impeaching this witness, to enable the parties adequately to argue their respective positions on brief. In view of the extensive cross-examination and the fact that the matters on which further hearings were sought were already of record in exhibits filed by the applicant, by agreement of all parties, after the close of the record, we cannot say that the commission, abused its discretion in concluding that further hearings would have been merely cumulative. Due process requires notice and opportunity to be heard (*Shenandoah Suburban Bus Lines, Inc., Case*, 158 Pa. Superior Ct. 638, 644, 46 A 2d 26, 29 (1946)), but here there were extensive hearings, all relevant matters were in evidence and under the circumstances, we find no deprivation of constitutional rights.

Finally the appellant accuses the commission of error in allowing Charles Lorenz, manager of the applicant, to invoke a claim of privilege against self-incrimination, when questioned concerning a criminal in-

formation charging unlawful interstate transportation pending, not against Lorenz but against the applicant, in the United States District Court for the Eastern District of Pennsylvania. Even if the examiner improperly sustained Lorenz' claim of privilege, this was harmless error, because at a later hearing in the case the applicant's attorney offered in evidence the entire record of the District Court proceedings which showed that five of the counts were withdrawn and the applicant pleaded nolo contendere and was sentenced to pay a fine of $100 on each of the remaining counts. The fact that the examiner sustained Lorenz' claim of privilege against self-incrimination at a hearing before the indictments against applicant were disposed of is, therefore, not prejudicial since all the facts concerning the federal criminal action against the applicant which were the subject of the proposed examination of Lorenz were subsequently placed before the commission and appear on the record. We cannot say that it was an abuse of discretion for the commission not to conclude that the applicant was unfit because of Lorenz' claim of privilege.

A review of the record reveals that the commission's finding of public necessity for the authority granted and its finding of the applicant's fitness is supported by evidence, and that the appellant has shown no lack of due process in the proceedings. The order of the commission must therefore be affirmed.

Order affirmed.