## Wilson, Appellant, *v.* Pennsylvania Railroad Company.

Argued September 30, 1965. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel L. Rodgers,* with him *Alice D. Tobias,* and *Rodgers and Roney,* for appellants.

*Aloysius F. Mahler,* for appellee.

OPINION BY MR. JUSTICE JONES, May 24, 1966:

This is a trespass suit for personal injury and property damages resulting from an accident which occurred in the early afternoon of December 22, 1959, at The Pennsylvania Railroad Company Ferry Street grade crossing in Allenport. At that time and place, defendant's train, consisting of 3 diesel locomotives and 135 empty coal hopper cars, struck the motor vehicle in which Eugene Wilson was driving alone. As a result of the collision, Wilson, thrown from the car, died on the way to the hospital.

Martha V. Wilson, widow of decedent (plaintiff), instituted three actions: (a) under the Wrongful Death Act for herself and as trustee ad litem for her minor children; (b) under the Survival Act as administratrix of her deceased husband's estate; (c) in her

own right as the owner of the automobile which was damaged in the collision.

At the trial, conflicting evidence was introduced as to whether or not the train sounded a warning whistle, whether or not the crossing had been ashed so as to make it safe for motor vehicles, and whether or not decedent's automobile had stopped on the crossing prior to the train's arrival or had backed into the oncoming train.

The jury rendered verdicts for defendant in all three actions. The court en banc refused plaintiff's motion for a new trial and entered judgment on the verdicts for defendant. Plaintiff, seeking a new trial, has appealed to this Court.

Plaintiff first contends that the trial court erred in refusing to affirm the following point for charge. "It is the duty of a railroad company to give sufficient notice of the train's approach on crossing a much-traveled highway, and to moderate the speed to such rate as is consistent with public safety, and, in determining such reasonable rate of speed, the jury may consider the fact that no flagman was stationed nor gates maintained there. 31 P.L.E. Railroad, Section 167, page 24." (Point 6).

Plaintiff argues that the court's refusal to affirm this point *in effect* eliminated the issue of excessive speed of the train from the jury's consideration. Taking the charge as a whole (as we are bound to do in determining whether or not reversible error was committed in instructing the jury (*James v. Ferguson*, 401 Pa. 92, 162 A. 2d 690)), we believe that the points of law contained in the above requested instruction were sufficiently and adequately covered by other instructions requested by plaintiff and affirmed by the court. Plaintiff's Point 5—*which was read to the jury*—in slightly different language, enunciated the same legal requirements as Point 6 as to the sufficiency of the

train's warning in view of the train's speed: "A railroad's employees in charge of a train are bound to give *timely and sufficient warning* of the train's approach to a crossing. Generally, the adequacy of a signal given when approaching a crossing depends on whether warning was given soon enough in view of *the rapid movement of the train,* but the adequacy of the signal may depend upon whether the signal was given too soon in view of the *retarded rate of speed of the train* and *in either event the question is whether the warning was timely, in view of all the circumstances."* (Point 5) (Emphasis added). Plaintiff's Point 4—*which was also read to the jury*—stated that, if an engineer apprehends that a person on or approaching a crossing will be in danger, "it is his duty to slacken the train's speed and, if possible, to stop it in order to avert an accident." Under the instant circumstances, the trial court did not err in refusing Point 6; *in essence,* such point was simply repetitive of legal concepts included in Points 4 and 5.

Moreover, plaintiff's counsel contends that "the lower court further refused to charge that the railroad had breached any duty by not having a flagman or gate or other protective device at the crossing in question . . . ." A careful reading of plaintiff's Point 6, supra, reveals that such point contained no such direct request to the trial court nor did any other point. Point 6 states that the lack of a flagman and gates should be considered on the issue of the reasonableness of the train's speed but did not encompass the question of the breach of any independent duty of the railroad to provide for a flagman or gates.[1] Further-

---

[1] The railroad owed no such independent duty here: "The absence of a flagman or safety gates at a crossing is not sufficient to charge a railroad company with negligence, unless there is evidence showing exceptional danger at that point: Cummings v. P.R.R., 301 Pa. 39.": *Haller v. Pennsylvania R.R.,* 306 Pa. 98, 103, 159 A. 10.

more, the relevance of the absence of a flagman and/or gates to the determination of the reasonableness of the train's speed is implicitly covered by plaintiff's Point 5, supra, which was read to the jury as an instruction to consider the timeliness of the engineer's warning, "in view of all the circumstances".

Next, plaintiff's counsel stated in his summation to the jury that the defendant should have produced a speed tape from a tachometer which would have established conclusively the speed at which the train was traveling, the production of which would have obviated any necessity for the jury to pass on the credibility of estimates of speed by defendant's employees. Defendant's counsel objected to this argument and asked the court to instruct the jury that plaintiff's counsel had the burden to compel defendant to produce "at the trial records kept in the regular course of the railroad's business relevant to this case, including any speed tape, if the engine involved was so equipped ...." (Defendant's Point 12) Plaintiff now argues that the trial court erred in reading this point to the jury.

Defendant's Point 12 was clearly correct, if, *in fact,* plaintiff had produced no evidence at trial that defendant possessed or should have possessed a speed tape from a tachometer. Plaintiff cannot shift to defendant the burden of the production of evidence the existence of which plaintiff has failed to establish. "(a) The party having the risk of non-persuasion . . . is naturally the one *upon whom first falls this duty of going forward with evidence*; because, since he wishes to have the jury act for him, and since without any legal evidence at all they could properly take no action, there is no need for the opponent to adduce evidence"; 9 Wigmore, Evidence, §2487, p. 279 (3d ed. 1940). (Emphasis original). Plaintiff asserts that the following testimony of the defendant's engineer on cross-examination was sufficient to establish the *existence*

of a speed tape:[2] "Q. Was the tape examined by you? A. No, I have no way to get into that tape. I have no authority to touch that tape."

However, this engineer's testimony, taken in context, points to the opposite conclusion. The cross-examination continued: "Q. That tape would show your precise speed? A. *If there was a tape there,* it would, I imagine. (Emphasis added) Q. Was there a tape there? A. *I don't know.* (Emphasis added) Q. Did you have a tachometer or other recording instrument in the cab of the locomotive? A. There was a speedometer on the engine, yes." (A speedometer is different from a tachometer.) The engineer's testimony clearly demonstrates that he had no knowledge of the existence of a tachometer in his locomotive.

As an alternative to reliance upon the trial testimony, plaintiff now asks this Court to take judicial notice of the fact that the large majority of locomotives in the United States carry tachometers (10 Am. Jur., Proof of Facts, Railroads, p. 37 (1961)), thereby shifting the burden to defendant to produce such a tachometer or explain why this particular train was not equipped with one. However, plaintiff did not request the court below to take judicial notice of such fact; she, therefore, cannot do so for the first time on appeal: *Platt v. Philadelphia,* 183 Pa. Superior Ct. 486, 496, 497, 133 A. 2d 860, 864 (1957). Moreover, we agree with defendant that plaintiff's citation of the settled principle of law which permits a negative inference to be drawn from a party's failure to produce

---

[2] Plaintiff's brief notes that "defendant's counsel after oral argument on the motion for new trial admitted that two of the three locomotives were equipped with a tachometer, but that one tachometer was not functioning properly, and the other had run out of tape before reaching the scene of the accident." This "admission" by defendant's counsel coming *after* the trial is irrelevant in establishing the existence of the tachometer at the trial.

evidence within its peculiar control (see: *Tremaine v. H. K. Mulford Co.*, 317 Pa. 97, 106, 107) has no application where, as here, the opposing party has not shown, either by pre-trial discovery procedure or at trial, that such evidence was in defendant's possession.

Plaintiff further urges that the trial court erred in affirming defendant's Point 3, *without qualification*, that a railroad has the superior right of travel over an automobile at a grade crossing. Not only is this an accurate statement of the Pennsylvania law (*Newhard v. Pennsylvania Railroad Co.*, 153 Pa. 417, 26 A. 105; *Haller v. Pennsylvania Railroad*, 306 Pa. 98, 159 A. 10; *Anstine v. Pennsylvania Railroad Company*, 342 Pa. 423, 20 A. 2d 774, but, when taken in conjunction with plaintiff's Points 3, 4, 5, which were affirmed by the court and which instructed the jury that under certain circumstances a train must stop for a traveler and must always give an adequate warning on approaching a crossing, defendant's Point 3 was in fact qualified.

Neither is there any merit in plaintiff's contention that the trial court erred in reading defendant's Point 13 to the jury. Substantially, Point 13 states that the jury could find contributory negligence on the part of the decedent if it found that he was sitting on the crossing in such a way as to be able to see an oncoming train and had sufficient time to remove himself to safety. Since "one who crosses a railroad at grade is under a duty not only to stop, to look and to listen before entering upon the crossing but also *to continue* to look and to listen while traversing the crossing" (*Riesberg v. Pittsburgh & Lake Erie Railroad*, 407 Pa. 434, 441, 180 A. 2d 575, 578), the affirmance of this was proper. Even if plaintiff's contention that the train would not have been in view when decedent looked to the north *prior* to going on the crossing, and that, due to no fault of his own, decedent was on the track for a full thirty seconds be-

fore he was struck were accepted by the jury, the jury could still have reasonably considered that the decedent had failed to *continue* to look and listen while on the crossing and was, therefore, contributorily negligent in not removing himself to a place of safety.

Next, the plaintiff assigns as error the trial court's affirmance of defendant's ninth point for charge which instructed the jury to disregard *as conclusions* Joseph Byrne's testimony that the decedent's car wheels were spinning on the approach to the crossing and that the car had stalled after reaching the crossing. The testimony of Byrne, who was not qualified as an expert, was definitely a recital of his own conclusion; he admitted, on cross-examination, that he could not see the wheels spinning but rather could only hear a screeching noise and that he only surmised the car had stalled "because there was no exhaust from the tailpipe". Plaintiff submits that these conclusions are admissible as an exception to the opinion evidence rule because the facts of which Byrne had knowledge were incapable of adequate description to the jury without accompanying opinions: Henry, Pennsylvania Evidence, §531 (4th ed. 1953). However, the application of this rule lies within the trial court's discretion, and its ruling will not be reversed on appeal unless there is an abuse of discretion: *Cooper v. Metropolitan Life Insurance Co.,* 323 Pa. 295, 301, 186 A. 125, 128. Whether Byrne's conclusions were necessary is a question upon which reasonable men could differ, and we find no abuse of discretion in the trial court's exclusion of this testimony.

Plaintiff next contends that the trial court erred in refusing to instruct the jury on the question of wanton misconduct and in refusing to affirm and charge on the following points: "1. If you find that the defendant's engineer had actual knowledge that the automobile operated by Eugene Wilson was stopped on the

crossing for a sufficient length of time before the accident to give the engineer a reasonable opportunity to stop the train and avoid the accident, you may conclude that the defendant was guilty of wanton misconduct. Geelen vs. Pennsylvania Railroad Company, 400 Pa. 240 (1960), at page 247.; 2. If you find that wanton misconduct existed, then contributory negligence, if any, on the part of the decedent, Eugene Wilson, cannot prevent plaintiff's recovery. Geelen vs. Pennsylvania Railroad Company, 400 Pa. 240 (1960), at page 248." In justification of its refusal to so charge, the court below, in its opinion, stated: "In order to justify the charge requested, the burden rests with the plaintiff to show *actual knowledge* of the defendant's agents of plaintiff's perilous position. In this the plaintiff failed. Mr. Byrne testified that the **decedent's** vehicle was on the track for about thirty seconds before being hit, but no evidence was presented concerning the actual prior knowledge of the peril, *nor did the testimony establish any facts from which knowledge could be inferred.*" (Emphasis added). It is readily seen that the trial court refused to charge on these points because of the lack of evidence that defendant's engineer had *actual knowledge* of the peril in which decedent was placed. In the recent case of *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A. 2d 440,[3] this Court, in substance, held that the correct test for wanton misconduct in Pennsylvania is not only whether or not defendant's engineer *actually knew* but also whether, from the facts of which he was aware, he *had reason to know* that decedent was in a potentially perilous or danger-fraught position: "These cases, as well as the Restatement of Torts, clearly indicate that if the actor realizes *or* at least has knowledge of sufficient facts to cause a reasonable man to

---

[3] In fairness to the trial court, it must be noted *Evans* was not decided until after the instant appeal was taken.

realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the existing danger." *Evans v. Philadelphia Transportation Company*, 418 Pa. 567, 574. (Emphasis original).

In the case at bar, there *was* sufficient testimony upon which the jury reasonably could have found that, despite the engineer's specific assertion that he did not realize the danger to decedent until it was too late to avoid the accident, the engineer had reason to know of the danger in the light of all the circumstances.[4]

In *Peden v. Baltimore & Ohio Railroad Co.*, 324 Pa. 444, 188 A. 586 and *Cover v. Hershey Transit Co.*, 290 Pa. 551, 139 A. 266, the juries were permitted ". . . to find from the physical facts that, in fact, the train operators did see the plaintiffs' perils, when their testimony had been that they had not seen the peril until it was 'too late'." *Evans v. Philadelphia Transit Company*, 418 Pa. 567, 576, 577, 212 A. 2d 440, 445.

Defendant submits that, even if the refusal to affirm and charge on these two points constituted error, such error, under the instant circumstances, does not

---

[4] One of plaintiff's witnesses testified that one could see a quarter of a mile (more than 1,300 feet) from the crossing to the north, the direction from which the train approached. Defendant's engineer, himself estimated that he could see the crossing on that day approximately from 1,000 or more feet away. (25-30 railroad car lengths at approximately 40 feet per car). There was also testimony that at the speed the engineer was traveling (approximately 30 miles per hour) he, in fact, was able to stop his train within 900 feet after applying his brakes one car length from the crossing. Finally, Byrne, one of plaintiff's witnesses, testified on direct examination that the decedent was stuck on the crossing 30 seconds before the accident. At 30 miles per hour, that would have made the oncoming train more than 1,300 feet away from the decedent when his car first stopped or stalled on the crossing.

constitute reversible error. The rationale of this submission is two-fold: (a) that the jury, by its verdicts, found that plaintiff had not even shown *ordinary* negligence on defendant's part and a fortiori, the jury could not possibly have found *wanton* misconduct on facts which did not persuade the jury of the existence of even *ordinary* misconduct: (b) other instructions did adequately cover the situation. Defendant, in this respect, points to two factors: First, the court, in its charge, eliminated from the jury's consideration any question of contributory negligence in the suit for property damage to the automobile and yet the jury in that suit returned a verdict for defendant as it did in the personal injury actions wherein contributory negligence was an issue, thus indicating as the basis for all three verdicts the absence of even ordinary negligence;[5] Second, the court did affirm and read to the jury plaintiff's third requested point[6] which, in substance, in-

---

[5] One difficulty with defendant's line of argument is the trial court's charge to the jury concerning the absence of contributory negligence from plaintiff's property damage suit. The record reveals that the trial judge charged: "I should further instruct you with respect to contributory negligence *on the part of Mrs. Wilson* in connection with her claim for damages to her automobile. You will not consider contributory negligence on *her* part. That is not involved in her case and in connection with her claim for damages to her automobile." (Emphasis added). Pursuant to defendant's request, the trial court clarified this mis-impression: "When we were talking about the responsibility of the plaintiff, we were speaking of the decedent as the plaintiff. We hope that you weren't misled. That is to say, the man that was killed at the crossing." Even though initially the court below spoke erroneously of Mrs. Wilson's contributory negligence, we believe that the matter was corrected sufficiently for the jury's confusion to be dispelled.

[6] "3. If you find that the decedent, Eugene Wilson, was present on the crossing for a sufficient time and under circumstances as to provide the engineer, if sufficiently alert, with knowledge of decedent's perilous position and with a reasonable opportunity to bring the train to a stop before it reached the crossing, you may conclude that the defendant was negligent. Geelen vs. Pennsylvania Railroad Company, 400 Pa. 240 (1960), at page 244."

structed the jury that, if it found the circumstances were such that defendant's engineer *should have known* of decedent's perilous position and had an opportunity to stop the train in time to avoid the accident, then the jury could find defendant "negligent".

A review of the record requires certain conclusions: (a) the court below should have affirmed the two requested points for charge and permitted the jury to pass on the question of wanton misconduct *as presented by these two points*; (b) the court, however, did *in effect* instruct the jury on circumstances which fundamentally would constitute wanton misconduct and did permit a finding of culpability if such circumstances were so found; (c) the verdicts of the jury clearly reveal that defendant was exonerated from liability because the jury found defendant was not guilty of *any* ordinary misconduct or negligence. Taking into consideration all the circumstances herein presented, we are convinced that whatever error the trial court committed in refusing to affirm plaintiff's Points 1 and 2 was effectively cured both by the court's affirmance of the third point and the verdicts of the jury. To grant a new trial on this ground certainly would not advance the interests of justice.

We agree with plaintiff that the court en banc, in its opinion, erred in justifying the submission of four witnesses' impeaching statements to the jury for consideration in the jury room as "substantive proof of the issues being tried".[7] These prior contradictory statements of *witnesses*—two of which were offered by

---

[7] The trial court erroneously relied on the theory of law that prior contradictory statements by a *party* may be admitted as substantive evidence. *Mitchell v. Shirey*, 407 Pa. 204, 208, 180 A. 2d 65, 67; *Morse Boulger Destructor Co. v. Arnoni*, 376 Pa. 57, 65, 101 A. 2d 705, 709; *Lemmon v. Bufalino*, 204 Pa. Superior Ct. 481, 485, 205 A. 2d 680, 682, 683. Here the four prior contradictory statements were by *witnesses*.

plaintiff and two by the defendant—were *only* admissible at trial for the limited purpose of impeachment. *Dincher v. Great A. & P. Tea Company*, 356 Pa. 151, 156, 51 A. 2d 710, 713; *Harrah v. Montour Railroad Company*, 321 Pa. 526, 527, 184 A. 666, 667; *Zavodnick v. Rose and Son*, 297 Pa. 86, 90, 146 A. 455; Henry, Pennsylvania Evidence, §801 (4th ed. 1953).

However, even if a witness' prior contradictory statement may only be admitted for the limited purpose of impeachment, the trial court may, in its discretion, permit the jury to take such statement to the jury room.[8]

In *Hughes v. Delaware & Hudson Canal Co.*, 176 Pa. 254, 35 A. 190, this Court held that defendant should have been able to introduce into evidence the prior inconsistent written statement of one of plaintiff's witnesses and that, instead of defendant merely reading the statement to the jury, "the defendant was entitled to have the paper itself put before the jury". (176 Pa. at 254, 259). In *Hughes*, as in the case at bar, the written contradictory statement of the witness was prepared by a third person for the witness' signature.

Plaintiff's counsel did not request the trial court to limit the use of such statements, nor did he remind the court of its failure to instruct the jury on the limited probative value of the statements in question; under such circumstances, the trial court's omission to so instruct the jury is not reversible error. *Keefer v. Byers*, 398 Pa. 447, 452, 453, 159 A. 2d 477, 480. Plaintiff's counsel did object at trial to the jury's re-

---

[8] The general rule in Pennsylvania is that exhibits properly admitted into evidence, with the exception of depositions and transcripts of testimony, may, within the discretion of the trial court, be sent out with the jury. *Whitfield v. Reading Company*, 380 Pa. 566, 570, 571, 112 A. 2d 113; *Brenner v. Lesher*, 332 Pa. 522, 528; Henry, Pennsylvania Evidence, §733 (4th ed. 1953).

tiring with the impeaching statements to the jury room "because I believe it gives undue weight to these statements which were taken out of court, rather than considering all of the testimony, including the direct testimony under both of these various witnesses". (Record p. 284a) Plaintiff's counsel did not object to their use by the jury for other than impeachment purposes and did not remind the court of its duty to restrict the jury's use of the statements to such impeachment purposes.

The court below, in denying a new trial, did rationalize that the statements were "substantive proof" and, in so doing, erred. However, it is within our province to affirm a trial court's actions upon grounds other than those given by the court below in justification of its action: *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 145, 146, 189 A. 2d 271. Allowance to take into the jury room the witnesses' statements was clearly within the discretion of the trial judge, and we find no abuse of discretion in this respect; *Hughes,* supra. Moreover, it is axiomatic that counsel for a party cannot sit idly by and not attempt to direct the attention of the trial court to a possible limitation or restriction on the use of evidence and then, after an unfavorable verdict, take advantage of an error which he could and should but did not call to the court's attention. Such inaction on counsel's part weighs heavily in evaluating the right to a new trial.

We have carefully reviewed this record and are satisfied that a fair trial was had and that, whatever error was committed, such error does not constitute ground for the grant of a new trial.

Judgments affirmed.

Mr. Justice COHEN concurs in the result.