**COMMONWEALTH of Pennsylvania,**

v.

**Gilbert MARTINEZ**

**Appeal of Intervenor, PG Publishing Company d/b/a The Pittsburgh Post–Gazette.**

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Feb. 6, 2007.

David J. Bird, Pittsburgh, for appellant.

James R. Gilmore, Asst. Dist. Atty., for Com., appellee.

BEFORE: BOWES, PANELLA, and POPOVICH, JJ.

OPINION BY PANELLA, J.:

¶ 1 In this case we consider whether the news media enjoys a common law right of access, after sentencing in a criminal case, to letters presented to the sentencing court by defense counsel on a defendant's behalf.

¶ 2 On November 8, 2001, Gilbert Martinez[1] was charged in six separate criminal complaints with twenty-one counts of various narcotics offenses involving the delivery of cocaine. Martinez was accused of, *inter alia*, selling cocaine from his office in the Controller's Office in the City–County Building in Pittsburgh during the months of October and November 2001.

¶ 3 On December 10, 2003, Martinez pled guilty to multiple counts of delivery of a controlled substance[2] and possession with intent to deliver a controlled substance.[3] Thereafter, Martinez's sentencing was scheduled for February 10, 2004.

Prior to his sentencing, a number of people, including government officials, wrote letters to the sentencing court requesting leniency in Martinez's sentencing. The letters requesting leniency were submitted to the sentencing court by Martinez's attorney and copies of the letters were provided to the Commonwealth. Subsequent thereto, at the sentencing hearing, the sentencing court stated the following:

> I have been in receipt of a number of letters that were filed in your behalf, from everybody from family to government officials. I have reviewed those letters. This is the time set for sentencing.

N.T., Sentencing, 2/10/04, at 3. The sentencing court imposed an aggregate period of three to six years incarceration, a sentence that failed to impose the mandatory minimum sentence sought by the Commonwealth.[4]

¶ 4 On March 2, 2004, the Pittsburgh Post–Gazette (the "Post–Gazette") filed a petition to intervene and motion for access to judicial records in which the newspaper requested copies of the letters submitted on Martinez's behalf. In its petition to intervene and motion for access to judicial records, the Post–Gazette noted that "the public has a paramount right to evaluate the activities of its officials and there is a public interest in knowing whether any elected or appointed officials wrote to the [c]ourt in an attempt to excuse or minimize Mr. Martinez's breach of the public trust...." Petition to Intervene and Motion for Access to Judicial Records, 3/2/04, at ¶ 18. At that time, neither the Com-

---

1. Martinez has not participated in this appeal.

2. 35 Pa.Stat. § 780–113(a)(30).

3. 35 Pa.Stat. § 780–113(a)(16).

4. The Commonwealth subsequently appealed Martinez's sentence and this Court reversed finding that the sentencing court failed to impose the appropriate mandatory minimum term of imprisonment. *See Commonwealth v. Martinez*, 378 MDA 2004, 881 A.2d 886 (Pa.Super. filed June 8, 2005) (unpublished memorandum).

monwealth nor Martinez opposed the Post–Gazette's petition and motion. On April 4, 2004, the sentencing court summarily denied the Post–Gazette's petition and motion. This timely appeal followed. The sentencing court has filed a memorandum opinion in accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure on October 28, 2005.

¶ 5 On appeal, the Post–Gazette raises the following issues for our review:

1. Whether the trial court committed an error of law when it held that the public has no presumptive right of access to any judicial document connected with a criminal sentencing proceeding unless that document is formally filed or actually introduced into evidence at the time of the hearing?

. . .

2. Whether the trial court committed an error of law and abused its discretion when it denied an unopposed petition to intervene and motion for access to public judicial documents without carefully considering the public interest in obtaining access to the documents or identifying any specific countervailing interest supporting the denial of public access?

. . .

Appellant's Brief, at 3. Although the Post–Gazette purports to raise two separate issues on appeal, for ease of disposition we frame the issue as follows: Does the news media enjoy a common law right of access, after sentencing, to letters submitted on a defendant's behalf by defense counsel, which were presented to and re-

viewed by the sentencing court in preparation for sentencing?

■ ¶ 6 Our standard of review is well-established: A trial court's decision regarding access to judicial documents and proceedings is within the sound discretion of the trial court, and we will reverse only if the trial court abuses its discretion. *See Commonwealth v. Fenstermaker*, 515 Pa. 501, 512, 530 A.2d 414, 420 (1987). Chief Justice Ralph Cappy, in *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000), reiterated the parameters of "discretion" in a judicial setting as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

560 Pa. at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184 (1993)).

■ ¶ 7 The sentencing court maintains that the letters at issue are not public judicial documents as the letters were not filed "and were not introduced into evidence at the time of the hearing." Sentencing Court Opinion, 10/28/05, at 2.[5] On appeal, the Commonwealth writes in sup-

---

**5.** It is clear from the record that the letters were not sent directly to the sentencing court, but, instead, were presented to the sentencing court and the District Attorney's office by defense counsel.

port of the sentencing court's position.[6] The Post–Gazette contends, however, that the letters are public judicial documents as the sentencing court relied on them in formulating its sentence. *See* Appellant's Brief, at 12–13.

■ ¶ 8 In *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987), the Pennsylvania Supreme Court recognized the common law right to examine public judicial documents. *Id.*, 515 Pa. at 508, 530 A.2d at 418 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.")). Furthermore, although not argued by the Post–Gazette, we note that there is a qualified First Amendment right of access to certain judicial proceedings and documents. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality).[7]

■ ¶ 9 "The threshold inquiry in a case … where a common law right of access is asserted is whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute *public judicial documents.*" *Fenstermaker*, 515 Pa. at 508, 530 A.2d at 418 (emphasis added). However, our research, and that of the parties, has failed to disclose any published Pennsylvania case addressing whether letters provided to a sentencing court are public judicial documents subject to a common law right of access. We again turn to *Fenstermaker* wherein our Pennsylvania Supreme Court emphasized that the level of the reliance placed on a document in the judicial decision-making process is a key factor in making this determination.

¶ 10 In *Fenstermaker*, the Supreme Court considered whether affidavits supporting arrest warrants that had already been executed were public judicial documents. Importantly, in deciding that the affidavits were judicial documents, the Court reasoned, *inter alia*, that the judicial decision-making process was focused on the information contained in the affidavits. Specifically, the Court explained:

> [D]ocuments upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character, for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavits and the information contained therein provide a sufficient basis upon which to justify an arrest.

515 Pa. at 509, 530 A.2d at 418.[8]

■ ¶ 11 Therefore, we must now perform the two step analysis to determine

---

**6.** As mentioned, the Commonwealth did not oppose the Post–Gazette's petition to intervene and motion for access to judicial records in the trial court. We note, however, that this does not preclude the Commonwealth from arguing in support of the sentencing court's order on appeal. *See, e.g., Platt v. Philadelphia*, 183 Pa.Super. 486, 133 A.2d 860, 864 (1957) (an appellee may advance additional reasons to sustain the decree of the court below even though not raised in or considered by the court below).

**7.** Although there was no opinion joined by a majority of the Supreme Court in *Richmond Newspapers*, seven Justices recognized that this right of access is embedded in the First Amendment, and applied to the States through the Fourteenth Amendment. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

**8.** We note that the Superior Court has continued to utilize the standard enunciated in *Fenstermaker* that a key factor is whether the information was used in the judicial decision-

whether the letters in issue are, first, judicial documents, and second, public judicial documents. In the present case, in imposing Martinez's sentence, the sentencing court specifically stated that it had received and reviewed the letters submitted by counsel on his behalf. *See* N.T., Sentencing, 2/10/04, at 3. Accordingly, because the record demonstrates that the letters played a part in the sentencing proceedings, i.e., the judicial proceedings, the letters are judicial documents.

¶ 12 As mentioned, the document must also be "public" in nature to meet the threshold inquiry when a common law right of access is asserted. In this analysis, we are guided by the observation of our Pennsylvania Supreme Court in *Fenstermaker* that courts have long recognized "[t]he importance of the public having an opportunity to observe the functioning of the criminal justice system...." *Id.*, 515 Pa. at 505, 530 A.2d at 417.[9]

¶ 13 In imposing Martinez's sentence, the sentencing court, as mentioned, noted that it had reviewed the letters and that the letters had been "filed."[10] N.T., Sentencing, 2/10/04, at 3. Given the open nature of criminal trials, and sentencing proceedings in particular, we find that letters submitted to a sentencing court by defense counsel at the time of sentencing, which the sentencing court explicitly re-

---

making process. In *Commonwealth v. Long*, 871 A.2d 1262 (Pa.Super.2005), *appeal granted*, 584 Pa. 437–438, 884 A.2d 248–249 (2005), this Court considered "whether a list containing empanelled jurors' names and addresses is a public judicial document subject to a common law right of access." *Id.*, at 1275. In finding that the list in issue was not a judicial document, the Superior Court noted, with respect to the judicial nature of the document, that "this information is not of the type upon which the decision in the case was based." *Id.*, at 1276. On September 21, 2005, the Pennsylvania Supreme Court granted the petitions of appeal of two members of the media as to whether, *inter alia*, there is a constitutional or common law right of access to the "names and addresses of impaneled jurors in a criminal case...." *Id.*, 584 Pa. 437–438, 884 A.2d 248–249 (2005).

In *Commonwealth v. Crawford*, 789 A.2d 266 (Pa.Super.2001), a panel of this Court considered whether a Commonwealth brief presented only to the trial judge and defense counsel was a public judicial document. The Superior Court acknowledged the mandate from *Fenstermaker* and noted that the Supreme Court had "concluded that the documents at issue in that case [were] 'clearly judicial in character' since the information contained therein [was] critical to a magistrate's determination of whether probable cause to arrest exists." *Crawford*, 789 A.2d at 271 (quoting *Fenstermaker*, 515 Pa. at 509, 530 A.2d at 418).

9. We are cognizant of the federal courts' acknowledgment that the public, and consequently the press, have a qualified First Amendment right of access to sentencing proceedings. *See United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir.2005).

10. The sentencing court maintains in its Rule 1925(a) opinion that the "letters were not filed...." Sentencing Court Opinion, 10/28/05, at 2. At sentencing, the court specifically stated that the letters had been "filed." N.T., Sentencing, 2/10/04, at 3. In addition, the sentencing court stated that it had "reviewed" the letters. Given our discussion *supra*, the specific method of "filing" a document with the sentencing court is irrelevant to determining whether it is a public judicial document.

We also note that when a trial court's opinion conflicts with the certified record, the certified record is controlling. *See Commonwealth v. Ingber*, 516 Pa. 2, 8 n. 3, 531 A.2d 1101, 1104 n. 3 (1987) (where certified record failed to contain testimony cited in trial court's opinion the Court refused to consider representation in trial court opinion). *See* also G. RONALD DARLINGTON, KEVIN J. McKEON, DANIEL R. SCHUCKERS & KRISTEN W. BROWN, PENNSYLVANIA APPELLATE PRACTICE 2d § 1925:10 (2004) ("Where the trial court's Rule 1925 opinion contains statements that either conflict with the trial court record, or go beyond it, the appellate court will disregard them.").

views in preparation for sentencing, are public judicial documents regardless of whether the sentencing court formally dockets the letters. As public judicial documents, there is a presumption of public access to the documents. Letters that are submitted by defense counsel carry no air of confidentiality.[11] By reason of their submission by defense counsel, there is a clear implication that the defense requests consideration of the letters by the court in preparation for sentencing. There is no question that without the availability of this information, our citizenry would have no basis to assess the discretion exercised by elected judicial officers. It has been often repeated that public access to documents which play a role in the performance of a judicial function encourages public confidence in the administration of justice.

¶ 14 We note that our conclusion is in accord with federal cases construing the common law right of access to sentencing letters. *See, e.g., United States v. Kushner,* 349 F.Supp.2d 892, 906 (D.N.J.2005) (holding that a "strong presumption of access" applies to sentencing letters that the court "makes explicit reference to at the hearing as playing a role in the judicial formulation of its sentence.").

■■■■■ ¶ 15 Our finding that the letters at issue are public judicial documents gives rise to a presumption of access to these letters. *See Fenstermaker,* 515 Pa. at 508–509, 530 A.2d at 418.[12] Our inquiry, however, does not end at this point as the Court in *Fenstermaker* noted that

the right to inspect judicial documents is not absolute, and courts do have supervisory power over their records and files.

Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied.

515 Pa. at 513, 530 A.2d at 420 (citing *Nixon,* 435 U.S. at 597–599, 98 S.Ct. 1306). With respect to the circumstances prohibiting public access to a document, the Court observed that "[i]t is difficult to . . . access or to identify all the factors to be weighed in determining whether access is appropriate." *Id.* (quoting *Nixon,* 435 U.S. at 598–599, 98 S.Ct. 1306). "It is the responsibility of the trial court to determine, in the exercise of its informed discretion, whether the common law right of access will outweigh countervailing factors." *P.G. Publishing Co. v. Commonwealth,* 389 Pa.Super. 86, 566 A.2d 857, 860 (1989), *aff'd,* 532 Pa. 1, 614 A.2d 1106 (1992) (citing *Nixon,* 435 U.S. at 598, 98 S.Ct. 1306).

¶ 16 In the present case, the Commonwealth, Martinez, and the sentencing court failed to identify *any* countervailing factors. The sentencing court notes, however, that it can deny access to a judicial record "when court files might . . . become a vehicle for improper purposes." Sentencing Court Opinion, 10/28/05 at 2 (quoting *Commonwealth v. Frattarola,* 336 Pa.Super. 411, 485 A.2d 1147, 1155 (1984)). The sentencing court, however, does not

---

11. *See, e.g., United States v. Gotti,* 322 F.Supp.2d 230, 249 (E.D.N.Y.2004).

12. The "common law presumption of public access" for judicial records was recognized by the United States Court of Appeals for the Third Circuit in *In re Cendant Corporation,* 260 F.3d 183, 192 (3d Cir.2001). In the same

vein as the cases cited above, the Court determined that the status of a document as a "judicial record" depends on whether the document has been filed with the court, or "otherwise somehow incorporated or integrated into [the] . . . court's adjudicatory proceedings." *Id.*

provide any further explanation of the alleged improper purpose behind the Post–Gazette's request.[13]

¶ 17 As noted, a strong presumption of access attaches to the letters as they played a role in the formulation of Martinez's sentence and were filed with the sentencing court. The complete absence of any countervailing factors or an explanation of the alleged improper purpose behind the Post–Gazette's request for the letters, when coupled with a strong presumption of access to the letters and their filing with the court, compels our finding that the sentencing court abused its discretion in denying the Post–Gazette's motion for access to the letters.

¶ 18 Accordingly, the sentencing court is directed to permit the Post–Gazette to make copies of the letters.

¶ 19 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

**13.** The sentencing court contends that the letters are "akin to a Pre–Sentence Investigation Report." Sentencing Court Opinion, 10/28/05, at 2. Pre-sentence reports are "confidential, and not of public record." Pa. R.Crim.P., Rule 703(A), 42 PA. CONS.STAT.ANN. There is no dispute that the letters were not made part of the pre-sentence investigation report in the present case. *See* Commonwealth's Brief, at 17. As such, Rule 703(A) is simply not implicated. Pretrial materials submitted under Rule 703 have an underlying confidentiality basis and are reflective of the Pennsylvania Supreme Court's recognition that the materials contained therein should be afforded presumptive confidentiality. *See Commonwealth v. Mines*, 680 A.2d 1227 (Pa. Cmwlth.1996), *appeal denied*, 547 Pa. 738, 690 A.2d 238 (1997), *cert. denied*, 520 U.S. 1190, 117 S.Ct. 1477, 137 L.Ed.2d 689 (1997).