J-S33030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GREGORY DEAN KIMMEL | : | No. 1515 MDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001402-2015

BEFORE: BENDER, P.J.E., OTT, J. and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.: **FILED AUGUST 29, 2017**

The Commonwealth appeals from the order entered September 13, 2016, in the Centre County Court of Common Pleas.[1] The trial court precluded the Commonwealth from introducing into evidence edited excerpts from Gregory Dean Kimmel's recorded prison telephone conversations, unless the recordings were offered for impeachment purposes. On appeal, the Commonwealth contends the trial court abused its discretion when it

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth properly certified in its notice of appeal that the order "will terminate or substantially handicap the prosecution." Notice of Appeal, 9/13/2016. **See** Pa.R.A.P. 311(d).

sustained Kimmel's objection to the admission of edited portions of the recorded calls during its case-in-chief. For the reasons below, we affirm.

The facts underlying Kimmel's arrest are as follows. On August 5, 2015, at approximately 11:45 a.m., Cecil Barnhart robbed the Citizen's Bank on Atherton Street in State College, Pennsylvania. Barnhart appeared in a "very noticeable" disguise, and demanded the teller give him all of the large bills. N.T., 9/12/2016, at 91. During the robbery, Barnhart's cell phone began ringing. He then became more aggressive, and walked behind the teller station to grab the money himself. In doing so, Barnhart mistakenly took a dye pack. *See id.* at 94-95.

Shortly thereafter, Barnhart fled the building, and the dye pack exploded. He then jumped into the passenger side of a waiting, blue sedan. *See id.* at 116-117. Immediately before the robbery, two women, who worked in a nearby office building, noticed an older gentleman bent over the hood of the blue sedan with a tire iron or crow bar in his hand. They observed that he seemed out of place. When the women returned from lunch after the robbery, the man and the car were gone. *See id.* at 56-60, 67-71.

On August 7, 2015, the police received a confidential tip regarding the robbery that led them to the home of Susan Carr Wilson, Barnhart's girlfriend. After obtaining a search warrant, the police went back to Wilson's residence and observed a blue sedan in the driveway, which had not been there earlier that day. The officers looked in the car and saw, on the rear

seat, two U.S. currency bills with red dye stain. *See id.* at 129-132. They later learned the car was registered to Kimmel, and a subsequent search of the car revealed red dye stain in the front interior of the vehicle. *See id.* at 190-192. The police also recovered an order form from Wilson's residence, which indicated two sandwiches had been purchased from a hoagie shop in Potters Mills at approximately 12:13 p.m. on the same day as the robbery.[2] The police later reviewed surveillance footage from the hoagie shop, and obtained several still photos. The individuals in the still photos were subsequently identified as Barnhart and Kimmel. *See id.* at 132-140.

Barnhart was arrested, and admitted his role in the bank robbery. He told the police that some of the money was buried on his property, and some was hidden under the hood of Kimmel's car. *See id.* at 202. After finding the hidden money, the police arrested Kimmel and charged him with robbery, theft, receiving stolen property, and three counts of conspiracy.[3] Barnhart entered an open guilty plea prior to trial. The Commonwealth proceeded with Kimmel's jury trial on September 12, 2016. Barnhart's attorney informed the trial court that Barnhart intended to assert his Fifth

---

[2] The hoagie shop is located 20 to 25 minutes from the bank. N.T., 9/12/2016, at 142.

[3] 18 Pa.C.S. §§ 3701(a)(1)(vi), 3921(a), 3925(a), and 903, respectively.

Amendment privilege against self-incrimination, and would not testify at Kimmel's trial.[4]  *See* N.T., 9/12/2016, at 78.

During its case-in-chief, the Commonwealth sought to introduce into evidence edited portions of Kimmel's recorded prison telephone calls. Kimmel objected, contending the statements constituted inadmissible hearsay.  *See id.* at 215-216.  However, when the Commonwealth successfully argued the calls were admissible as statements against interest, Kimmel requested the recorded calls be played in their entirety so his comments would not be taken out of context.  *See id.* at 217.  The Commonwealth then asserted it could not introduce the entire recordings because they contained ***Bruton***[5] statements - during the calls, Kimmel

---

[4] Barnhart's sentencing was scheduled to take place after Kimmel's jury trial.

[5] ***Bruton v. U.S.***, 391 U.S. 193 (1968).  It is not clear to this panel whether the introduction of Kimmel's recorded prison calls would have violated ***Bruton***.  Our Supreme Court has explained:

> The rule established in ***Bruton*** prevents the use of a statement of a non-testifying codefendant which directly inculpates one or more other defendants at a **joint trial**, but which has been deemed inadmissible against such defendant(s), based on the Sixth Amendment right to confront the witness.

***Commonwealth v. Robins***, 812 A.2d 514, 521 (Pa. 2002) (emphasis added).  Here, Kimmel was not tried jointly with Barnhart since Barnhart entered a guilty plea prior to trial.  Moreover, the statement at issue was not Barnhart's recorded confession, but rather, Kimmel's own statement regarding what Barnhart told police.

Nevertheless, the Commonwealth does not raise this claim on appeal, and, in fact, insisted at trial that it could not introduce the entire recordings
*(Footnote Continued Next Page)*

stated several times that Barnhart told police Kimmel was involved in the robbery. **See id.** Accordingly, the trial court conducted an *in camera* review of the recorded calls to determine if the Commonwealth's proposed excerpts were taken out of context. After listening to the recordings, and hearing argument from both counsel, the court took the matter under advisement. Following a short recess, the trial court sustained Kimmel's objection, "with the caveat that those tapes could possibly be used for impeachment purposes should [Kimmel] testify." **Id.** at 235. The Commonwealth asked the court to reconsider its ruling, which the court declined. Consequently, the Commonwealth informed the trial court that it intended to seek an interlocutory appeal. This appeal followed.

The sole issue raised by the Commonwealth on appeal is whether the trial court abused its discretion in sustaining Kimmel's objection to the admission of seven edited segments from Kimmel's prison phone calls.[6] The Commonwealth insists the recordings contain inconsistent and inculpatory

_(Footnote Continued)_ ───────────────

because they would violate **Bruton**. **See** N.T., 9/12/2016, at 217. Therefore, any challenge to the **Bruton** argument is waived. In any event, as will be discussed *infra*, the trial court concluded the recordings did not contain any relevant information regarding Kimmel's culpability for the crime.

[6] The edited recordings ranged in length from five seconds to 41 seconds each, and totaled less than two and one-half minutes, out of the nearly 60 minutes of Kimmel's recorded prison phone call conversations. **See** Commonwealth's Brief at 20-22, n.2-8.

statements made by Kimmel, which were "relevant and highly probative of [his] guilt." Commonwealth's Brief at 20. It maintains Kimmel's inconsistent statements about his involvement in the bank robbery (first, stating he was four hours away, but later placing himself at the scene) evidence his "consciousness of guilt." *Id.* at 24. Moreover, the Commonwealth argues Kimmel's statement that Barnhart received a call "while **we was doing** the bank" constitutes a statement against interest and "clearly inculpate[s]" him in the crime. *Id.* at 21, 24 (emphasis added). Furthermore, the Commonwealth disputes the trial court's determination that the edited portions of the calls were misleading, and could be taken out of context. *See id.* at 18.

Our standard of review of a trial court's evidentiary ruling is well-established:

> Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. ***Commonwealth v. Washington***, 63 A.3d 797, 805 (Pa.Super.2013). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Martinez***, 917 A.2d 856, 859 (Pa.Super.2007).
>
> Generally speaking, evidence is admissible if it is relevant, that is, "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Williams***, 586 Pa. 553, 581, 896 A.2d 523, 539 (2006) (citation omitted); Pa.R.E. 402.

***Commonwealth v. Kinard***, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*).

- 6 -

Here, the Commonwealth sought to introduce only small portions of Kimmel's recorded prison telephone calls. Pursuant to the Pennsylvania Rules of Evidence, when a party seeks to introduce part of a recording, the "adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Pa.R.E. 106. The Comment to Rule 106 makes clear:

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.

Pa.R.E. 106, Comment. This Court has further explained: "Rule 106 is not an exclusionary rule, but, rather, it merely permits the adverse party to introduce related writings so that the documents originally introduced are not read out of context" and the jury is not presented with "misleading or impartial evidence." **Commonwealth v. Passmore**, 857 A.2d 697, 712 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005).

In the present case, when the Commonwealth first attempted to present the partial recordings, Kimmel objected on hearsay grounds. **See** N.T., 9/12/2016, at 215-216. The Commonwealth argued Kimmel's calls constituted statements against interest, and based on the Commonwealth's proffer regarding those proposed statements, the trial court agreed. **See id.**

at 216-217. However, Kimmel then requested the Commonwealth introduce the entire recordings so that his comments would not be taken out of context. *See id.* at 217-218. At that point, the Commonwealth (perhaps mistakenly) stated it could not introduce the calls in their entirety because Kimmel's statements would violate *Bruton*. *See id.* *See also supra*, n.5. Therefore, the trial court proceeded to conduct an in camera review of the recordings to determine whether Kimmel's statements were relevant, and whether the proposed edited portions were taken out of context. *See* N.T., 9/12/2016, at 223-234. After a brief recess, the court sustained Kimmel's objection, prohibiting the Commonwealth from introducing the edited calls during its case-in-chief. *See id.* at 234-235.

The trial court explained its ruling as follows:

> After reviewing each of the recorded telephone calls in their entirety, the Court found [the Commonwealth's] aim of introducing its edited sequence as an admission of guilt by [Kimmel] was misleading. None of [Kimmel's] statements in the recorded telephone calls amounted to an admission or consciousness of guilt. Rather, the overriding themes of [Kimmel's] statements in the recorded telephone calls were how [Kimmel's] life has changed since being charged with the underlying offenses … and that [Kimmel] is innocent of the crimes he has been charged with. The specific statements [the Commonwealth] sought to introduce were an edited sequence of [Kimmel] referencing facts in this case, some of which are in dispute. [The Commonwealth] was, in effect, attempting to preemptively impeach [Kimmel's] credibility before it was even placed at issue.
>
> In summation, this Court undertook an analysis pursuant [to] Pa.R.E. 106 of the edited sequence of [Kimmel's] statements and of the recorded telephone calls from which the edited sequence was created. The Court found the edited

sequence of [Kimmel's] statements was misleading and did not constitute an admission or consciousness of guilt as the [Commonwealth] proffered. After reaching this finding, the Court undertook a relevancy analysis in regards to the entirety of the recorded telephone calls. The Court found the substance of the recorded phone calls was nearly wholly irrelevant to consequential facts in this case. Insofar as said calls referenced facts in this case, the Court determined the introduction of those edited portions would be unduly prejudicial to [Kimmel] in that they would impeach [his] credibility before it was even placed at issue.

Trial Court Opinion, 10/17/2016, at 3-4.

Our review of the record - and in particular the recorded telephone calls - reveals no abuse of discretion on the part of the trial court. It is axiomatic that "[t]he admissibility of evidence 'depends on relevance and probative value.'" *Commonwealth v. Bryant*, 57 A.3d 191, 195 (Pa. Super. 2012) (quotation omitted). Here, the trial court found none of the statements the Commonwealth sought to introduce, when considered in context, constituted "an admission or consciousness of guilt." Trial Court Opinion, 10/17/2016, at 3. We agree. At no time did Kimmel state or imply he was involved in the bank robbery. Rather, he insisted Barnhart had lied to the police regarding Kimmel's involvement. We note the Commonwealth insists Kimmel's statement that "someone called [Barnhart] **while we was doing the bank**, it sure wasn't me," evidences his participation in the robbery. Commonwealth's Brief at 20-21 (emphasis added). However, at the time he made that statement, Kimmel was referring to information that was contained in his criminal "paperwork." *See* Commonwealth's Exhibit 12c, recording #35643816785409 at 11:10-11:35 (Kimmel stating, "that's

the evidence they got on me."). Moreover, although Kimmel commented several times that he was in trouble simply for giving a friend a ride, he maintained his innocence in the bank robbery. Therefore, we agree with the trial court's determination that the proposed evidence was not relevant, and, in fact would be more prejudicial than probative.[7] **See** Trial Court Opinion, 10/17/2016, at 3-4.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2017

---

[7] Of course, if Kimmel should decide to testify at trial, the recorded calls could be used to impeach his credibility. **See** Order, 9/13/2016.